3. GUNSHOT WOUNDS:

A. General: A total of six gunshot wounds are identified and noted to have been inflicted in close temporal proximity.

B. Gunshot Wound #1: The arbitrarily selected first gunshot wound consists of a nonlethal, distant and near contact perforating gunshot wound of the back. The entrance gunshot wound is identified over the inferior left side of the back at a point 72 cm inferior from the top of the head and 19 cm to the left of the mid vertical axis of the back. The entrance gunshot wound is slightly ovoid in configuration measuring 1.0 cm on the vertical axis x 0.9 cm on the horizontal axis. A 360 degree abrasion ring is identified about the entrance gunshot wound measuring variably up to 0.2 cm.

The angles of trajectory are left to right, superior to inferior at approximately 5 to 10 degrees, and anterior to posterior at approximately 20 to 25 degrees.

The projectile is noted to course through the back without injuring any major structure, and exit the back at a point 75 cm inferior from the top of the head and 2 cm to the left of the mid vertical axis of the back. The slit-like exit gunshot wound measures 1.4 cm on the horizontal axis x 0.6 cm on the vertical axis.

The projectile is not recovered as it is noted to have exited the body.

No tattooing, smudging, or flame injury is identified on the skin surface about the entrance gunshot wound and no powder residue is identified in the wound tract. The clothing is submitted to the Mississippi State Crime Lab for powder residue analysis.

The gunshot wound represents a nonlethal, distant but near contact, perforating gunshot wound of the back.

C. Gunshot Wound #2: The arbitrarily selected second gunshot wound consists of a nonlethal, distant but near contact gunshot wound of the left flank (anterior left back). The gunshot wound is nonlethal, having coursed through the back and exiting on the mid part of the back. The entrance gunshot wound is identified over the far lateral left flank at a point 73 cm inferior from the top of the head and 16 cm anterior from the back. The entrance gunshot wound is circular in configuration measuring 1.0 cm in diameter and a 360 degree abrasion ring is centered about the entrance gunshot wound measuring variably up to 0.2 cm. No tattooing, smudging, or flame injury is identified on the skin surface about the entrance gunshot wound and no powder residue is identified in the wound tract.

The clothing is submitted to the Mississippi State Crime Lab for powder residue analysis.

The angles of trajectory are left to right, anterior to posterior at approximately 30 to 35 degrees, and superior to inferior at approximately 25 to 30 degrees.

The projectile is noted to course through the lateral left flank and left back before exiting immediately superior to the left buttocks at a point 84 cm inferior from the top of the head and 6 cm to the left of the mid vertical axis of the back. The slit-like exit gunshot wound measures 1.6 cm on the horizontal axis x 0.9 cm on the vertical axis.

D. Gunshot Wound #3: The arbitrarily selected third gunshot wound consists of a lethal, distant or near contact penetrating gunshot wound of the left shoulder. The entrance gunshot wound is identified over the lateral aspect of the left shoulder at a point 26 cm inferior from the top of the head and 11 cm anterior from the back. The entrance gunshot wound is essentially circular in configuration measuring 0.9 cm in diameter with an abrasion ring found from 6 o'clock to 12 o'clock measuring up to 0.2 cm.

No tattooing, smudging, or flame injury is identified on the skin surface about the entrance gunshot wound and no powder residue is identified in the wound tract. The clothing is submitted to the Mississippi State Crime Lab for powder residue analysis.

The angles of trajectory are left to right, superior to inferior at approximately 40 to 50 degrees, and anterior to posterior at approximately 20 degrees.

The projectile is noted to course through the shoulder fracturing the lateral left third and fourth ribs before perforating the upper and lower lobes of the left lung, and then fracturing the lateral process of the left side of the 9th thoracic vertebra. A large caliber, copper jacketed bullet, consistent with a 380 caliber projectile is covered from the right side of the back. Approximately 2600 cc of blood is noted to remain within the left pleural cavity.

The gunshot wound represents a lethal, distant or near contact penetrating gunshot wound of the left shoulder.

E. Gunshot Wound #4: The arbitrarily selected fourth gunshot wound consists of a potentially lethal, distant and near contact penetrating gunshot wound to the abdomen. The entrance gunshot wound is identified on the superior left abdominal wall and centered at a point 65 cm inferior from the top of the head, 20 cm inferior and medial from the left nipple, and 5 cm to the left of the mid vertical axis of the abdomen. The entrance gunshot wound is ovoid in configuration measuring 1.9 cm in extent on the vertical axis x 1.0 cm in extent on the horizontal axis. A 360

degree abrasion ring measuring variably up to 0.4 is identified about the entrance gunshot wound.

No tattooing, smudging, or flame injury is identified on the skin surface about the entrance gunshot wound and no powder residue is identified in the wound tract. The clothing is submitted to the Mississippi State Crime Lab for powder residue analysis.

The angles of trajectory are anterior to posterior at approximately 30 to 35 degrees, left to right, and superior to inferior at approximately 50 to 55 degrees.

The projectile is noted to course through the superior left abdominal wall perforating the small bowel at seven locations, the colon at one location, and the mesentery at three locations, as well as urinary bladder. A large caliber, copper jacketed bullet is recovered from the back.

Approximately 800 cc of blood is identified within the abdominal cavity.

The gunshot wound represents a potentially lethal, distant or near contact penetrating gunshot wound of the abdomen.

F. Gunshot Wound #5: The arbitrarily selected fifth gunshot wound consists of a nonlethal, distant and near contact penetrating gunshot wound of the right arm. The entrance gunshot wound is identified at a point 59 cm inferior from the top of the head. The entrance gunshot wound measures 1.4 cm on the vertical axis x 0.9 cm on the horizontal axis, and is ovoid in configuration. A 360 degree abrasion ring is identified about the entrance gunshot wound that measures variably up to 0.4 cm.

No tattooing, smudging, or flame injury is identified on the skin surface about the entrance gunshot wound and no powder residue is identified in the wound tract.

The angles of trajectory are anterior to posterior, inferior to superior at approximately 40 to 50 degrees, and right to left at approximately 20 degrees.

The projectile is noted to course through the anterior surface of the extremity fracturing the humerus. A large caliber, copper jacketed bullet is recovered from the proximal medial surface of the right arm. No major vessels are injured in the wound tract.

The gunshot wound represents a nonlethal, distant or near contact penetrating gunshot wound of the right arm.

G. Gunshot Wound #6: The arbitrarily selected sixth gunshot wound consists of a nonlethal, distal penetrating gunshot wound of the left forearm. The entrance gunshot wound is identified over the posterior surface of the left forearm and is centered at a

point 77 cm inferior from the top of the head. The entrance gunshot wound is circular in configuration measuring 1.0 cm in diameter and a 360 degree abrasion ring is identified about the entrance gunshot wound measuring up to 0.2 cm.

No tattooing, smudging, or flame injury is identified on the skin surface about the entrance gunshot wound and no powder residue is identified in the wound tract.

The angles of trajectory are anterior to posterior, right equals approximately left +/- 10 degrees, and inferior to superior at approximately 40 to 50 degrees. A large caliber copper jacketed bullet is recovered from the wound tract. A fracture of the ulna is identified. No major vessels are injured during the course of flight of the projectile.

The gunshot wound represents a nonlethal, distant penetrating gunshot wound of the posterior left forearm.

4. INTERNAL EXAMINATION:

The body is opened via the usual "Y" incision and subcutaneous adipose tissue over the chest wall is noted to measure to a depth of 2 cm and over the abdomen to a depth of 3 cm. The anterior right and left ribs are reflected en bloc with the sternum in the usual manner. A small amount of clear wetting fluid is present within the right pleural cavity. Approximately 2600 cc of blood identified in the left pleural cavity. The right lung is noted to have a mass of 390 grams and the left lung is noted to have a mass of 380 grams. A perforating gunshot wound of the left lung is identified secondary to gunshot wound #3. The wound tract is noted to measure 16 cm in length and up to 2.3 cm in diameter. The lungs are serially cross sectioned and a small amount of serosanguineous fluid exudes from the cut surfaces. Examination of the cross sections of the lungs fails to reveal evidence of thromboembolic phenomena, tumor, and/or infection though focal hemorrhage is identified in the parenchyma of the left lung about the wound tract and the lungs bilaterally have a focal pale discoloration. Peritracheal hemorrhage and peribronchial hemorrhage is focally appreciated.

The pericardial sac is opened and a small amount of clear wetting fluid is present within the luminal space. The takeoff of the great vessels is unremarkable. The heart is noted to have a mass of 430 grams and external examination of the heart reveals moderate cardiomegaly without evidence of congestive heart failure. The coronary arteries are serially cross sectioned and approximately 20% luminal narrowing of the left coronary artery, 20% luminal narrowing of the right coronary artery, 10% luminal narrowing of the right and left circumflex coronary arteries, and 10% luminal narrowing of the anterior descending branch of the left coronary artery is found secondary to proximal and distal atherosclerotic plaquing lacking evidence of dystrophic

calcification or intraluminal thrombosis. The heart is serially cross sectioned and the right ventricle measures up to 0.7 cm in thickness and the left ventricle measures up to 2.3 cm in thickness. Examination of the cross sections of the heart fails to reveal evidence of acute or remote infarction. The four cardiac valves are unremarkable and no evidence of congenital heart disease is found. The aorta is examined through its entire course and reveals mild atherosclerotic plaquing that is neither calcified nor ulcerated.

The abdominal cavity is opened and approximately 800 cc of blood is identified within the luminal space of the abdominal cavity.

The liver assumes its usual right upper quadrant abdominal location and is noted to have a mass of 1960 grams. The capsule is intact and no subcapsular contusions are appreciated. The liver is serially cross sectioned and a small amount of serosanguineous fluid exudes from the pale cut surfaces. The gallbladder is found on the inferior surface of the liver and is noted to measure 9 cm in length and is distended secondary to the intraluminal presence of approximately 30 cc of green bile. No gallstones are identified and the mucosal surface of the gallbladder is unremarkable. The biliary tree is patent to the duodenum.

The spleen assumes its usual left upper quadrant abdominal location and is noted to have a mass of 220 grams. The capsule is intact and no subcapsular contusions are appreciated. The spleen is serially cross sectioned and a small amount of serosanguineous fluid exudes from the pale cut surfaces. Examination of the cross sections of the spleen reveal the malpighian corpuscles to be of normal size and number. A section of vertebral bone marrow is grossly unremarkable. Perihilar lymphadenopathy is appreciated and individual lymph nodes measure up to 1.3 cm. The lymph nodes are serially cross sectioned revealing changes of reactive lymphoid hyperplasia with prominent anthracotic pigment deposition. Evidence of individual lymph node effacement or multiple lymph node matting is not appreciated.

The right and left kidneys assume the usual retroperitoneal location and the right kidney is noted to have a mass of 220 grams and the left kidney is noted to have a mass of 210 grams. The capsules strip with ease revealing cortical changes consistent with mild arteriolonephrosclerosis. The kidneys are serially cross sectioned and a small amount of serosanguineous fluid exudes from the pale cut surfaces. Multiple renal calculi are identified measuring up to 1.2 cm to involve the right kidney and up to 1.3 cm to involve the left kidney. Prominent dilatation of the left calyceal system is appreciated and mild dilatation of the right calyceal system is noted. The ureters are single bilaterally and patent to the urinary bladder. The urinary bladder contains approximately 30 cc of yellow urine. A perforating gunshot wound of the urinary bladder is identified to involve the dome of the

urinary bladder. The prostate is serially cross sectioned and is unremarkable.

Examination of the esophagus reveals no distinct abnormalities. The stomach contains no particulate food matter or other material and the mucosal surface of the stomach is unremarkable. Seven perforating gunshot wounds of the small bowel and one perforating gunshot wound to the large bowel is appreciated. A total of three gunshot wounds are noted to perforate the mesentery. The vermiform appendix is unremarkable. No adhesions are identified to involve the organs of the abdominal cavity.

The pancreas assumes it usual retroperitoneal location and is noted to have a mass of 180 grams. The pale structure is serially cross sectioned and no other abnormalities are identified. The right and left adrenal glands assume the usual suprarenal location and each is noted to have a mass of 5 grams. The structures are serially cross sectioned and no abnormalities are identified. The thyroid gland is found on the anterior surface of the trachea and is noted to have a mass of 15 grams. The structures are serially cross sectioned and no abnormalities are identified.

The scalp is reflected and no evidence of a cephalohematoma is appreciated. The calvarium is removed and no evidence of an epidural, subdural, and/or subarachnoid hemorrhage is seen. The leptomeninges are thin and delicate. The brain has a mass of 1360 grams.

5. TOXICOLOGY:

Two gray-topped tubes of blood and two gray-topped tubes of urine are submitted to the Mississippi State Crime Laboratory under chain of custody for toxicological analyses. The final toxicological report issued by the Mississippi State Crime Laboratory reveals the absence of ethyl alcohol in both the blood and urine specimens. The drug screen reveals the presence of caffeine as reported by the Mississippi State Crime Laboratory in both the blood and urine specimens. Copies of the Mississippi State Crime Laboratory are affixed to the final post mortem protocol.

6. SEROLOGY:

One red-topped tube of ventricular heart blood is submitted to the Mississippi State Crime Laboratory under chain of custody for serological analysis. The final reports are pending.

7. DNA STUDIES:

One purple-topped tube of ventricular heart blood is co-submitted with the previously identified red-topped tube of ventricular heart blood under chain of custody to the Mississippi State Crime Laboratory for DNA analysis. The final reports are pending.

8. TRACE EVIDENCE:

Right and left fingerprints, right and left palm prints, pulled scalp hair, clothing, and bullets recovered from gunshot wounds 3, 4, 5, and 6 are submitted to the Mississippi State Crime Laboratory under chain of custody for analyses. The final reports are pending.

9. GUNSHOT RESIDUE:

A gunshot residue kit is employed to collect samples from the palmar and dorsal surfaces of the right and left hands and digits in the usual and prescribed manner. The gunshot residue kit is submitted to the Mississippi State Crime Laboratory for scanning electron microscopy analysis. The final reports are pending.

10. PHOTOGRAPHIC DOCUMENTATION:

During the course of the post mortem examination, photographic documentation of the remains is performed. The photographs are submitted to the County Coroner Medical Examiner/Investigator for distribution to the District Attorney's Office and appropriate Law Enforcement to include the Mississippi State Highway Patrol.

11. NOTIFICATION OF THE CORONER:

Upon completion of the external and internal examinations Coroner Medical Examiner/Investigator Roy Barnett is apprised to the preliminary cause and manner of death.

12. TRANSPORTATION OF THE REMAINS:

The remains are transported to and from the Rankin County Morgue by Ronnie Hopkins. The decedent is noted to arrive at the Rankin County Morgue at 2000 hours on 6 July 2001. The Mississippi Mortuary Services identification number for the decedent is 28940. The decedent is noted to be received in a blue body bag and the body bag has been tagged and sealed. The seal is labeled "Waterloo 0752474".

13. MICROSCOPIC ANALYSES:

A. Respiratory System: Sections of lung reveal intra-alveolar hemorrhage as well as atelectasis. Focal peritracheal hemorrhage is appreciated.

B. Cardiovascular System: Sections of myocardium are essentially unremarkable other than minimal ischemic change. Evidence of acute or remote infarction is not appreciated. A section of coronary artery reveals mild atherosclerotic plaquing as does a section of aorta.

C. Hepatobiliary System: A section of liver reveals minimal acute congestion as well as mild steatosis. Evidence of acute or chronic hepatitis is not seen. A section of gallbladder reveals autolytic change.

D. Reticuloendothelial System: A section of spleen reveals acute congestion. The germinal centers are unremarkable. A section of vertebral bone marrow reveals normal cellularity and maturation and no atypical cells are identified. A section of perihilar lymph node reveals reactive lymphoid hyperplasia with prominent anthracotic pigment deposition.

E. Genitourinary System: Sections of kidney reveal congestion as well as arteriolonephrosclerosis and occasional obsolescent glomeruli. A section of urinary bladder and a section of ureter is unremarkable.

F. Gastrointestinal System: A section of esophagus reveals mild periesophageal hemorrhage. A section of stomach is unremarkable. Sections of small bowel and large bowel reveal subserosal hemorrhage. A section of vermiform appendix is unremarkable.

G. Endocrine System: Sections of pancreas, adrenal gland, and thyroid gland are essentially unremarkable.

H. Central Nervous System: Sections of cerebral cortex, cerebellum, and brainstem are essentially unremarkable.

15. CAUSES OF DEATH AND PATHOLOGIC FINDINGS:

A. Immediate Cause of Death: Gunshot wound of the left shoulder, distant, or near contact and penetrating (gunshot wound #3).

B. Underlying Causes of Death:
(1) Perforating gunshot wound of the left lung.
(2) Left hemothorax.
(3) External hemorrhage.

C. Potentially Lethal Gunshot Wound: Gunshot wound of the abdominal wall, distant, or near contact and penetrating.

D. Injuries Sustained from the Potentially Lethal Gunshot Wound:
(1) Hemoperitoneum.
(2) Perforating gunshot wounds of the small bowel (seven).
(3) Perforating gunshot wounds of the mesentery (three).
(4) Perforating gunshot wound of the urinary bladder (one).
(5) Perforating gunshot wound of the large bowel (one).

E. Nonlethal Gunshot Wounds:
(1) Gunshot wound of the left back, distant, or near contact and perforating (gunshot wound #1).
(2) Gunshot wound of the left flank, distant, or near contact and perforating.

(3) Gunshot wound of the right arm, distant, or near contact and penetrating (gunshot wound #5).
(4) Gunshot wound of the left forearm, distant and penetrating (gunshot wound #6).

F. Other Acute Traumatic Injuries:
(1) Abrasions of the posterior surfaces of the left forearm (two).
(2) Contusion of the anterior surface of the right knee (one).
(3) Abrasion of the anterior surface of the right knee (one).

G. Other Pathologic Findings:
(1) Pulmonary vascular congestion, bilateral.
(2) Atelectasis of the lungs.
(3) Cardiomegaly.
(4) Biventricular concentric hypertrophy of the heart.
(5) Atherosclerotic coronary artery disease.
(6) Atherosclerosis of the aorta.
(7) Acute hepatic congestion.
(8) Hepatomegaly.
(9) Steatosis of the liver.
(10) Splenomegaly.
(11) Acute splenic congestion.
(12) Reactive lymphoid hyperplasia of the perihilar lymph nodes.
(13) Renomegaly, bilateral.
(14) Acute renal congestion, bilateral.
(15) Arteriolonephrosclerosis of the kidneys.
(16) Obsolescent glomeruli of the kidneys.
(17) Dilatation of the right and left renal calyces.
(18) Renal calculi, bilateral.
(19) Cerebral edema, minimal.

17. MECHANISM OF DEATH:

Development of irreversible hypovolemic shock secondary to acute internal exsanguination secondary to injuries sustained from the gunshot wound to the left shoulder (gunshot wound #3).

18. DISCUSSION OF THE CASE:

The decedent was noted to succumb secondary to a single, lethal gunshot wound striking the decedent in the left shoulder and coursing downward through the left lung leading to massive internal and external hemorrhage. A contributory cause of death is the gunshot wound of the abdomen producing multiple wounds of the small bowel, large bowel, mesentery, and omentum. In addition, a total of four nonlethal gunshot wounds have been described and superficial contusions and abrasions are noted and are noncontributory as to the cause and manner of death. Evidence of significant life-threatening disease is not found.

STH/ms12
dt 07/20/2001

I Certify this is a true and correct copy this the 29th day of August, 2001

Notary Public State of Mississippi At Large
My Commission Expires: December 15, 2001
Bonded Thru Heiden, Brooks & Garland, Inc.

[signature]

Rankin County Morgue
150 Concourse Drive
Pearl, Mississippi

BODY DIAGRAM






Decedent's Height ________ inches

Name Harold Gray Presley

Examined By ________ Date ________

Rankin County Morgue
150 Concourse Drive
Pearl, Mississippi

**BODY DIAGRAM**

7-C301




90

Decedent's Height ________ inches

Name Harold Gray Presley

Examined By [illegible] Date 6Nov04

Rankin County Morgue
150 Concourse Drive
Pearl, Mississippi

**BODY DIAGRAM**

7C3-01






Decedent's Height ________ inches

Name ________

Examined By ________ Date ________

Rankin County Morgue
150 Concourse Drive
Pearl, Mississippi

**BODY DIAGRAM**






Decedent's Height ____________ inches

Name ____________

Examined By ____________ Date ____________

Rankin County Morgue
150 Concourse Drive
Pearl, Mississippi

**BODY DIAGRAM**

7-C3-01 Front Back






Decedent's Height ________ inches

Name Examined ________

By ________ Date ________

Rankin County Morgue
150 Concourse Drive
Pearl, Mississippi

7-C301
GSW#1

FULL BODY, MALE – LATERAL VIEW




exit

L. ARM R. ARM







Name Harold Gray Dudley

Case No. 7-C301

Date 18 Jan 6 2005

Rankin County Morgue
150 Concourse Drive
Pearl, Mississippi

## BODY DIAGRAM






Decedent's Height ________ inches

Name Examined ________

By ________ Date ________

Rankin County Morgue
150 Concourse Drive
Pearl, Mississippi

7-C301

FULL BODY, MALE — LATERAL VIEW

GW#2




360° abrasion ring up to 0.2cm

no tattooing no stippling no [illegible]

no powder residue in wound track

Clothing [illegible]

Wound track
1) Left to Right
2) Anterior to Posterior in 30-35°
3) Superior to inferior in 25-30°

[illegible]

[illegible] left flank

no bullet recovered

Name: Harold Gary Presley 96 Case No. 7-C301

Date 6 Jun 01

Rankin County Morgue
150 Concourse Drive
Pearl, Mississippi

7-6301




97

Decedent's Name ____________________

Examined By ____________________ Date ____________________

Rankin County Morgue
150 Concourse Drive
Pearl, Mississippi

**BODY DIAGRAM**

Front

Back




Decedent's Height ________ inches

Name ________

Examined By ________ Date ________

Rankin County Morgue
150 Concourse Drive
Pearl, Mississippi

7C301

FULL BODY, MALE — LATERAL VIEW




99

Name

Case No. 7-C301

Date 6May01

Rankin County Morgue
150 Concourse Drive
Pearl, Mississippi

BODY DIAGRAM

Front Back




100

Decedent's Height ________ inches

Name ________

Examined By ________ Date ________

Rankin County Morgue
150 Concourse Drive
Pearl, Mississippi

BODY DIAGRAM




101

Decedent's Height ________ inches

Name Examined ________

By ________ Date ________

Rankin County Morgue
150 Concourse Drive
Pearl, Mississippi

7-C3-01

FULL BODY, MALE — LATERAL VIEW




Name Khaled Gary Presley 102

Case No. 7-C3-01

Date 6Aug01

Rankin County Morgue
150 Concourse Drive
Pearl, Mississippi

BODY DIAGRAM

7-C301






Decedent's Height ________ inches

Name Harold Gary Presley

Examined By ________ Date ________

Rankin County Morgue
150 Concourse Drive
Pearl, Mississippi

7 6307
On #Son



104

Decedent's Name Harvey Greg Beasley

Examined By

Date 6/20/04

Rankin County Morgue
150 Concourse Drive
Pearl, Mississippi

BODY DIAGRAM






Decedent's Height ________ inches

Name Examined Harold Craig Presley

By ________ Date ________

Rankin County Morgue
150 Concourse Drive
Pearl, Mississippi

7-C3-01

FULL BODY, MALE – LATERAL VIEW

GW #2 cont




106

Name Harold Gray Presley

Case No. 7-C3-01

Date 6 Aug 01

Rankin County Morgue
150 Concourse Drive
Pearl, Mississippi

BODY DIAGRAM






Decedent's Height ________ inches

Name Examined Harold Gray Presley

By ________ Date ________

Rankin County Morgue
150 Concourse Drive
Pearl, Mississippi

7-C301

FULL BODY, MALE – LATERAL VIEW

GSW #3




Name ______________________ 108

Case No. 7-C301

Date 6 Aug 01

Rankin County Morgue
150 Concourse Drive
Pearl, Mississippi

**BODY DIAGRAM**






Decedent's Height ________ inches

Name Examined ____________

By ____________ Date ____________

Rankin County Morgue
150 Concourse Drive
Pearl, Mississippi

FULL BODY, MALE – LATERAL VIEW





L. ARM

R. ARM



110

Name

Case No.

Date

Rankin County Morgue
150 Concourse Drive
Pearl, Mississippi

BODY DIAGRAM




111

Decedent's Height __________ inches

Name __________

Examined By __________ Date __________



Rankin County Morgue
150 Concourse Drive
Pearl, Mississippi

7-C301

FULL BODY, MALE — LATERAL VIEW

GSW #6, LNA

L. ARM R. ARM







Name [illegible] Case No. 7C301

Date 6 Dec 01

Rankin County Morgue
150 Concourse Drive
Pearl, Mississippi

BODY DIAGRAM






Decedent's Height ____________ inches

Name Examined ____________

By ____________ Date ____________