Rankin County Morgue
150 Concourse Drive
Pearl, Mississippi

7630



114

Decedent's Name Harold Gary Presley

Examined By ________________ Date ________

Crime Lab Case No. ____________

Agency Case No. 7-C3-01

# TOXICOLOGY DEPARTMENT

MISSISSIPPI CRIME LABORATORY
1700 East Woodrow Wilson
Jackson, Mississippi 39216
(601) 987-1600 Fax (601) 987-1615

County Lee
City ____________
Submitting Agency Lee Co. Coroner

Name of Decedent Harold Gray Presley
Age 53 Sex Male Race Caucasian Date of Death 6 July 01
Approximate Time of Death PM (2400 hrs)
Date Samples Drawn 6 July 01 Time Samples Drawn 2045
Samples Drawn By [illegible]
Coroner/Medical Examiner/Pathologist ____________
Address [illegible] Med Center 3 [illegible] [illegible] 38042
Phone 8024882

Probable Cause of Death: 1. Multiple GSW
2. ____________

Probable Manner of Death:

- ✓ Homicide
- ___ Suicide
- ___ Accidental
- ___ Natural
- ___ Pending
- ___ Undetermined

Please briefly describe the circumstances and/or a brief medical history if known:
SO / Lee Co Shot by Suspect (Cpl. [illegible])

List all of decedents known medications: ?

Was decedent hospitalized prior to death: YES (NO) (circle)

If Yes: Number of Hours in Hospital ____________.
Number of Days in Hospital ____________.
List all medications patient received in hospital including intravenous administration ____________

Service Requested:

- ✓ Alcohol Analysis (submit vitreous fluid in addition to blood)
- ✓ Drug Analysis (submit urine, bile and/or liver tissue in addition to blood when possible)
- ___ Tricyclic Antidepressants
- ___ Anticonvulsant Panel
- ___ Carbon Monoxide (submit whole blood)
- ___ Clinical Urinalysis
- ___ Other (Be Specific) ____________

Note:
1. The Mississippi Crime Laboratory does not routinely analyze for antibiotics, antifungals, certain cardiac medications, certain antihypertensives, or diuretics.
2. Biological samples should ideally be submitted in grey top test tubes containing the preservative Sodium Fluoride (NaF).
3. Special or esoteric analyses may have specific sampling or pretreatment requirements and inquiries to the toxicology department should be made as soon as possible.
4. In suspected overdoses or to rule out medication toxicity some drugs may require both blood and liver quantitative analyses (i.e. Phenothiazines) for meaningful interpretation. In these cases an autopsy may be indicated. Please consult the Toxicology Department or the State Medical

STEVEN HAYNE, M.D.
350 Crossgates Blvd. • Brandon, MS 39042

AME# 7 C3 01 Date 6 June 01

Decease: HAROLD GRAY PRESLEY

County: LEE

Contents: TWO SOCKS

ONE BRIEFS

ONE SHIRT

Hair & Fibers Powder Residue Paint & Glass

**STEVEN HAYNE, M.D.**
Anatomic, Clinical and Forensic Pathology

# EVIDENCE SUBMISSION

350 Crossgates Blvd.
Brandon, MS 39042
Phone (601) 824-8492

CMEI LEE CO

Decease HAROLD GRAY PRESLEY 53 yo Cauc Male

AME# 7 C3 01

| Pathologist | Coroner | Additional Report |
|---|---|---|
| Steven Hayne, M.D. | ROY BARNETT | |
| 350 Crossgates Boulevard | CMEI LEE CO | |
| Brandon, MS 39042 | | |

## CHAIN OF CUSTODY

| | | | | |
|---|---|---|---|---|
| Recovered By: [signature] | Title: | Date: 6 July 01 | Time: 20:15 |
| Delivered By: | Title: | Date: | Time: |
| Received By: | Title: | Date: | Time: |

| EXHIBIT | DESCRIPTION | EXAMINATIONS REQUESTED |
|---|---|---|
| 2 | gray top tubes blood in sealed bag | tox ETOH drugs |
| 2 | gray top tubes urine in sealed bag | tox ETOH drugs clinical urinalysis |
| | gray top tubes bile in sealed bag | tox ETOH drugs |
| | gray top tubes vitreous in sealed bag | tox ETOH drugs glucose |
| 1 | red top tube blood in sealed bag | tox ETOH drugs ABH serotype DNA |
| | red top tube gastric content in sealed bag | ID contents |
| 1 | purple top tube blood in sealed bag | DNA CO level |
| ✓ | pulled scalp hair in sealed bag | Hold for study requests |
| ✓ | RT and LT finger and palm prints in sealed bag | Hold for study requests |
| | RT fingernail scrapings in sealed bag | tissue, hair, blood, fiber studies, ID material |
| | LT fingernail scrapings in sealed bag | tissue, hair, blood, fiber studies, ID material |
| ✓ | Gunshot Residue Kit in sealed bag | SEM |
| | Sexual Assault Kit in sealed box | Process kit |
| | shotgun pellets in sealed bag | size |
| 4 | bullet in sealed bag [GW #3, 4, 5, 6] | class/manufacturer |
| | wadding in sealed bag | gauge/manufacturer |
| | power piston in sealed bag | gauge/manufacturer |
| ✓ | clothing in sealed bag | hair fibers powder residue paint & glass |

Shan Hales, DFTCB
Forensic Scientist

This report represents the analytical results of the examinations performed on the items of evidence in this case. It should be noted that this report does not represent all documentary items contained in the master file. Should additional material be required for court purposes, please contact the laboratory as soon as possible.

CERTIFIED REPORT

All samples submitted for toxicological examination will be routinely disposed of six (6) months after analyses are completed. If you anticipate that this evidence will be needed, please contact the laboratory to arrange for its return.

# MISSISSIPPI CRIME LABORATORY

**Lab Case #: 01-011220**

Request: 0009

Page 1 of 2

TOXICOLOGY Report

July 11, 2001

Main Laboratory

1700 E. WOODROW WILSON AVE.
JACKSON, MS 39216
601-987-1600
FAX: 601-987-1615

CMEI Roy Barnett
Lee Co. CMEI
P. O. Box 185
Shannon, MS 38868

VICTIM: HAROLD RAY PRESSLEY
SUSPECT: BILLY STONE

REFERENCE- Agency Case #

REQUEST FOR ANALYSIS

On 7/9/01 it was requested that the TOXICOLOGY section perform the following analysis: Drug Screen - Other. This examination was completed on 7/11/01.

EVIDENCE

On 7/9/01 at 3:36 PM, Forensic Scientist Willie Hughes received the following evidence from the MS State Medical Examiner via Sally Lawrence:

| | |
|---|---|
| Evidence Submission 042-A | ONE SEALED PLASTIC BAG CONTAINING TWO GRAY TOP TEST TUBES OF BLOOD. |
| Evidence Submission 042-B | ONE SEALED PLASTIC BAG CONTAINING TWO GRAY TOP TEST TUBES OF URINE. |

Drug Confirmation Results

Sub. #: 042-A
Caffeine

Sub. #: 042-B
Caffeine

REMARKS

Harold Ray Presley

It is the policy of the Toxicology section of the MS Crime Laboratory that no drug is reported present without confirmation.

I certify that this is a true and correct copy.
This the 29th day of August 2001 Janet Burroughs

CERTIFIED REPORT

CONT'D: AWH

Notary Public State of Mississippi At Large
My Commission Expires: December 15, 2001
Bonded Thru Heiden, Brooks & Garland, Inc.

Shan Hales, DFTCB
Forensic Scientist

This report represents the analytical results of the examinations performed on the items of evidence in this case. It should be noted that this report does not represent all documentary items contained in the master file. Should additional material be required for court purposes, please contact the laboratory as soon as possible.

CERTIFIED REPORT

All samples submitted for toxicological examination will be routinely disposed of six (6) months after analyses are completed. If you anticipate that this evidence will be needed, please contact the laboratory to arrange for its return.

# MISSISSIPPI CRIME LABORATORY

Lab Case #: 01-011220

Request: 0008

Page 1 of 2

TOXICOLOGY Report

July 11, 2001

Main Laboratory

1700 E. WOODROW WILSON AVE.
JACKSON, MS 39216
601-987-1600
FAX: 601-987-1615

CMEI Roy Barnett
Lee Co. CMEI
P. O. Box 185
Shannon, MS 38868

VICTIM: HAROLD RAY PRESSLEY
SUSPECT: BILLY STONE

REFERENCE- Agency Case #

**REQUEST FOR ANALYSIS**

On 7/9/01 it was requested that the TOXICOLOGY section perform the following analysis:
Alcohol Analysis - Other. This examination was completed on 7/11/01.

**EVIDENCE**

On 7/9/01 at 3:36 PM, Forensic Scientist Willie Hughes received the following evidence from the MS State Medical Examiner via Sally Lawrence:

| | |
|---|---|
| Evidence Submission 042-A | ONE SEALED PLASTIC BAG CONTAINING TWO GRAY TOP TEST TUBES OF BLOOD. |
| Evidence Submission 042-B | ONE SEALED PLASTIC BAG CONTAINING TWO GRAY TOP TEST TUBES OF URINE. |

Drug Confirmation Results

Sub. #: 042-A
Ethyl Alcohol, 0.00 %
*blood from tube labeled "Harold Ray Presley"*

Sub. #: 042-B
Ethyl Alcohol, 0.00 %
*urine*

I certify this is a true and correct copy
This the 29th day of August 2001
Janet Burroughs

Notary Public State of Mississippi At Large
My Commission Expires: December 15, 2001
Bonded Thru Heiden, Brooks & Garland, Inc.

CERTIFIED REPORT CONT'D: AW

EXHIBIT C

U.S. Department of Justice

Office of Justice Programs

*Bureau of Justice Assistance*

---

*Washington, D.C. 20531*

July 19, 2001

Janet Burroughs
Lee County Sheriff's Department
510 N. Commerce
Tupelo, MS 38804

**Ref: PSOB Claim # 01-192: Sheriff Harold R. Presley**

Dear Ms. Burroughs:

This letter is in response to the "**Death Benefits Questionnaire**" concerning the death of Sheriff Presley and his survivors' eligibility for benefits under the Public Safety Officers' Benefits act of 1976.

I have enclosed two claim forms which must be submitted to this office to file a claim for benefits. The form entitled "**Report of Public Safety Officer's Death**" must be completed and signed by the head of Sheriff Presley's employing agency. Documents to be submitted with the form are listed below.

**Detailed Statement of Circumstances**, a summary of the incident that includes when and where it happened, what initiated the incident and details of what took place afterward, and when and where the decedent was pronounced dead. This document must be on the employer's letterhead, bearing the original signature of the head of the employing agency. It also must be notarized.

**Investigation Report.** This document must bear the original signature of the reporting officer or the investigating agency's records custodian. It also must be notarized.

**Complete autopsy report**, bearing the original signature of an official in the medical agency that performed the autopsy. It also must bear the agency's raised seal or be notarized. If an autopsy was not performed, submit a statement to that effect bearing the original signature of the head of the decedent's employing agency or the medical examiner. It also must be notarized.

**Toxicology report**, bearing the original signature of an official in the medical agency that performed the toxicology analysis. It also must bear the agency's raised seal or be notarized. If a toxicology analysis was not performed, submit a statement to that effect bearing the original signature of the head of the decedent's employing agency or the medical examiner. It also must be notarized.

**Death certificate**, bearing the raised seal of the medical examiner or the Department of Health.

The form entitled "**Claim for Death Benefits**" should be completed and signed by the claimant. If a person other than the claimant signs the claim form, an affidavit must be submitted by the claimant authorizing this individual to file the claim on his/her behalf. Documents to be submitted with this form are listed below.

**Decedent's birth certificate**, which identified the names of both parents and bears the raised seal of the issuing agency.

EXHIBIT
tabbies
C

**Decedent's marriage certificate**, bearing the raised seal of the agency that issued the certificate.

If either the decedent or spouse was previously married, provide a complete **divorce decree** (including custody agreement) **for all previous marriages** bearing the raised seal of the court of issuance. If a previous marriage ended with the death of a spouse, provide a copy of the spouse's death certificate bearing the raised seal of the issuing public agency.

**Birth certificate for all surviving children, and/or stepchildren**, regardless of age or dependency, which identifies the names of both parents and bears the raised seal of the issuing public agency.

If the decedent is survived by a **child who is 19 years of age or older and mentally or physically incapable of self support** provide a statement from a qualified physician indicating the nature of the child's disability and certifying that the child is not capable of self support because of the disability. This statement must bear the original signature of the physician and it must be notarized.

If the decedent is survived by a **child who is between 19 and 23 years of age and a full-time student**, provide (1) a certified copy of the child's student transcript; (2) a statement from the school indicating its financial and/or management relationship with local or state government; (3) a list of the organizations which accredit the school's programs. These documents must bear the original signature of the school official and must bear the raised seal of the school or they must be notarized.

If the decedent is survived by a **child who is 19 years of age or older, was not a full-time student** at the time of the decedent's death, and is capable of self support, submit a statement to that effect, bearing the child's original signature and notarized.

We would appreciate the Department assisting the family in the preparation of its claim to ensure that all materials are included and properly certified. We suggest that both the family's and the Department's claim materials be submitted as one package to the following address:

**Public Safety Officers' Benefits Program**
**Bureau of Justice Assistance**
**810 Seventh St. NW**
**Washington, DC 20531**

It needs to be emphasized that every document requested must be provided to support a claim and that each document must be an original or a certified copy (e.g. **bearing a raised seal** and a certifying **official's original signature**). If a required document is not provided or is not properly certified, we must request or return the document thereby delaying the payment of benefits.

If you have any questions regarding certification or content of claim documents, please call or write us for guidance. Our telephone number is (202) 307-0635 or Toll Free 888-744-6513.

Sincerely,

Eric Martin
Benefits Specialist
Public Safety Officers' Benefits Program

Enclosures

cc: Christine Roberts

EXHIBIT D

**BJA** Bureau of Justice Assistance

Office of Justice Programs - U.S. Department of Justice

DATE: 7/16/01

DEATH BENEFITS QUESTIONNAIRE

PLEASE SUBMIT THE FOLLOWING INFORMATION TO ENABLE US TO REQUEST SUPPORTING DOCUMENTATION TO INITIATE YOUR CLAIM.

1. DECEDENTS' FULL NAME: Harold Ray Presley
2. DECEDENT'S PUBLIC SAFETY OCCUPATION TITLE: Sheriff

   AGENCY NAME: Lee County Sheriff's Dept.
3. DECEDENT'S SOCIAL SECURITY NUMBER: [redacted]
4. DECEDENT'S DATE OF BIRTH: 10/05/48
5. DATE OF INJURY: 7/06/01

   DATE OF DEATH: 7/06/01
6. CITY AND STATE WHERE DEATH OCCURRED: Saltillo, Ms.
7. CAUSE OF DEATH: Was the officer wearing Body Armor (if applicable) Yes ( ) No (X)

   Cause of officer's death (choose one): Shot (X) Stabbed ( ) Heart Attack ( ) Drowned ( ) Deadly assault ( )

   If Traffic accident was the Officer (choose one if applicable): The driver ( ) A passenger ( ) A pedestrian ( )

   BRIEFLY EXPLAIN THE CIRCUMSTANCES SURROUNDING THE OFFICER'S DEATH:

   Sheriff was searching building for Kidnapping suspect when suspect opened fire shooting Sheriff 6 times Killing him
8. NAME, ADDRESS, AND SOCIAL SECURITY NUMBER OF SURVIVING SPOUSE:

   NAME: NONE

   SSN:

   ADDRESS

EXHIBIT
tabbies
D

# DEATH BENEFITS QUESTIONNAIRE (Page 2)

9. NUMBER OF TIMES DECEDENT AND WIDOW/WIDOWER WERE PREVIOUSLY MARRIED:

Decedent: 1 Spouse: 1 (Divorced)

10. DATE OF BIRTH/AGES OF CHILDREN FROM ALL MARRIAGES (Natural, step, adopted/posthumous, illegitimate) REGARDLESS OF AGE OR DEPENDENCY:
(If turning 18 years of age in the next six months please provide social security number)

| NAME | AGE | DOB | SSN |
|---|---|---|---|
| Patrick Ray Presley | 29 | [redacted] | |
| Bradford E Presley | 27 | | |
| Jada Hardin Presley | 22 | | |
| | | / / | |
| | | / / | |
| | | / / | |
| | | / / | |

11. NAME, ADDRESS AND TELEPHONE NUMBER OF THE HEAD OF THE DECEDENT'S'S EMPLOYING AGENCY (Chief, Superintendent, Commissioner, Etc.) AS WELL AS THE PERSON WHO WILL BE HANDLING THE CLAIM. (Contact Person).

| AGENCY HEAD | CONTACT PERSON |
|---|---|
| Jim Johnson | Janet Burroughs |
| 510 N. Commerce | 510 N. Commerce |
| Tupelo, Ms. 38804 | Tupelo, Ms 38804 |
| 662-841-9040 | 662 841-9046 |

12. IF THE DECEDENT WAS SINGLE OR DIVORCED AND HAD NO ELIGIBLE CHILDREN, PLEASE PROVIDE THE NAME(s) ADDRESS, TELEPHONE NUMBER(s) AND SOCIAL SECURITY NUMBERS OF HIS/HER PARENTS:

NAME: Christine H Roberts

SSN: [redacted]

ADDRESS: 1239 Reese St.
Tupelo, Ms 38804

TELEPHONE: 662-842-5651

**Person Completing the form (Print clearly)**

Name: Janet Burroughs Title: Administrative Asst Phone: (662) 841-9046

Please fax or mail this information to:
The Bureau of Justice Assistance, Special Programs, Public Safety Officers' Benefit Program,
810 7th Street, N.W., 4th Floor, Washington, DC 20531; Phone (202) 307-0635, Toll Free 1-888-744-6513 or
Fax (202) 616-0314

EXHIBIT E

STATE OF MISSISSIPPI

MISSISSIPPI STATE DEPARTMENT OF HEALTH
VITAL RECORDS

# CERTIFICATE OF DEATH
STATE OF MISSISSIPPI

TYPE OR PRINT WITH BLACK INK

FILING DATE: SEP 19 2001

STATE FILE NUMBER: 123- 01-019503

**DECEASED**

1. NAME (First, Middle, Last): Mary Christine Roberts
2. SEX: Female
3a. HOUR OF DEATH: 5:15 p.m.
3b. DATE OF DEATH (Month, Day, Year): Septebmer 7, 2001
4. RACE (Specify White, Black, American Indian, etc.): White
5a. AGE AT LAST BIRTHDAY Years: 86
ONLY IF UNDER 1 YEAR: 5b. MOS / 5c. DAYS
ONLY IF UNDER 1 DAY: 5d. HOURS / 5e. MINS
6. DATE OF BIRTH (Month, Day, Year): April 21, 1915
7a. COUNTY OF DEATH: Lee
7b. CITY OR TOWN OF DEATH: Tupelo
7c. HOSPITAL OR OTHER INSTITUTION-NAME AND NUMBER (If not in either, give street address, route number or other location): North Mississippi Medical Center 41T
7d. IF IN HOSP., OR INST. SPECIFY INPT., OUTPT., EMER. RM.OR DOA: Inpatient
8. STATE OF BIRTH: Mississippi

If death occurred in an institution, see HANDBOOK, regarding completion of RESIDENCE items

9. DECEDENT'S EDUCATION (Specify only highest grade completed): Elem/High School (0-12): 6; College (1-4, 5+):
10. MARRIED, NEVER MARRIED, WIDOWED, DIVORCED (Specify): Widowed
11. SURVIVING SPOUSE (If wife, give maiden name):
12. WAS DECEASED EVER IN U.S. ARMED FORCES? (Yes or No): No
13. ORIGIN OR DESCENT (Specify Cuban, Afro-American, Mexican, etc.): American
14. SOCIAL SECURITY NUMBER: [redacted]
15a. USUAL OCCUPATION (Kind of work done most of working life): Cafeteria Worker
15b. KIND OF BUSINESS OR INDUSTRY: Public Schools

For RESIDENCE items, enter actual location of home rather than mailing address

16a. RESIDENCE—STATE: Mississippi
16b. COUNTY: Lee
16c. CITY OR TOWN: Tupelo
16d. INSIDE CITY LIMITS (Specify Yes or No): Yes
16e. STREET AND NUMBER OR RURAL LOCATION: 1239 Reese Street

**PARENTS**

17. FATHER—NAME (First, Middle, Last): Jodie Houston
18. MOTHER—NAME (First, Middle, Maiden): Naomi Smith

**INFORMANT**

19a. INFORMANT—NAME (Type or print): Mr. James Roy Presley
19b. MAILING ADDRESS (Street and number or route and box number, City or town, State, ZIP code): [redacted]

**DISPOSITION**

20a. BURIAL, CREMATION, REMOVAL (Specify): Burial
20b. CEMETERY, CREMATORY—NAME: Lee Memorial Park
20c. LOCATION (City and State): Verona, MS
21a. EMBALMER—SIGNATURE AND NUMBER: [signature] FSWP011
21b. FUNERAL HOME—NAME AND MISSISSIPPI I.D. NUMBER: W.E. Pegues Funeral Home 41P
21c. MAILING ADDRESS (Street and number or route and box number, City or town, State, ZIP code): PO Box 1488, 535 Jefferson, Tupelo, MS 38802

**PRONOUNCEMENT**

22a. PERSON WHO PRONOUNCED DEATH—NAME AND TITLE (Type or print):
22b. PRONOUNCED DEAD (Month, Day, Year): ON Septebmer 7, 2001
22c. PRONOUNCED DEAD (Hour): AT 5:15 p.m.

**CERTIFIER**

23a. CERTIFIER—NAME (Type or print): Christine Metz, M. D.
23b. MAILING ADDRESS (Street and number or route and box number, City or town, State, ZIP code): Post Office Box 7240, Tupelo, Mississippi 38802

This section to be completed by physician if NOT a medical examiner:
24a. To the best of my knowledge, death occurred due to the cause(s) and manner as stated. SIGNATURE: [signature] MD
24b. DATE SIGNED (Month, Day, Year): 09-10-01
24c. STATE LICENSE NUMBER: 17124
24d. NAME OF ATTENDING PHYSICIAN IF OTHER THAN CERTIFIER (Type or print):

This section to be completed by medical examiner ONLY:
24e. On the basis of examination and/or investigation, in my opinion, death occurred due to the cause(s) and manner as stated. SIGNATURE:
24f. TITLE
24g. DATE SIGNED (Month, Day, Year)

Mississippi State Board of Health
Form No. 511
Revised 1-1-89

**CAUSE OF DEATH**

25. PART I. DEATH CAUSED BY:
IMMEDIATE CAUSE (Enter one cause only):
(a) Acute Respiratory failure — Interval between onset and death: 2days
DUE TO, OR AS A CONSEQUENCE OF (Enter one cause only):
(b) Congestive Heart Failure — Interval between onset and death: ~~4 days~~ 3mos
DUE TO, OR AS A CONSEQUENCE OF (Enter one cause only):
(c) — Interval between onset and death:

Conditions, if any, which gave rise to immediate cause stating the underlying cause last

26. PART II: OTHER SIGNIFICANT CONDITIONS—Conditions contributing to death but not resulting in the underlying cause given in PART I
27. AUTOPSY (Yes or No)
28. WAS CASE REFERRED TO MEDICAL EXAMINER? (Yes or No)

Had Decedent been Pregnant within 90 Days Prior to Death? ☐ Yes ☒ No

Use if death NOT due to natural causes:
29a. ACCIDENT, SUICIDE, HOMICIDE, PENDING INVESTIGATION, OR UNDETERMINED (Specify)
29b. DATE OF INJURY (Month, Day, Year)
29c. HOUR OF INJURY m.
29d. DESCRIBE HOW OR BY WHAT MEANS INJURY OCCURRED
29e. INJURY AT WORK (Yes or No)
29f. PLACE OF INJURY (Specify Home, Farm, Street, Factory, Office building, etc.)
29g. LOCATION — Street or route number, City or town, State

THIS IS TO CERTIFY THAT THE ABOVE IS A TRUE AND CORRECT COPY OF THE CERTIFICATE ON FILE IN THIS OFFICE

[signature] F. E. Thompson, Jr., M.D., M.P.H.
STATE HEALTH OFFICER

[signature] Judy Moulder
STATE REGISTRAR

126

OCT 29 2001

**WARNING:** A REPRODUCTION OF THIS DOCUMENT RENDERS IT VOID AND INVALID. DO NOT ACCEPT UNLESS EMBOSSED SEAL OF THE MISSISSIPPI STATE BOARD OF HEALTH IS PRESENT. IT IS ILLEGAL TO ALTER OR COUNTERFEIT THIS DOCUMENT.

EXHIBIT
tabbies
E

THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND ON WHITE PAPER. THIS IS WATERMARKED PAPER. DO NOT ACCEPT ... TO VERIFY WATERMARK.

EXHIBIT F

U.S. Department of Justice

Office of Justice Programs

*Bureau of Justice Assistance*

*Washington, D.C. 20531*

October 12, 2001

Janet Burroughs
Lee County Sheriff's Department
510 N. Commerce
Tupelo, MS 38804

Ref: PSOB Claim #01-192: Sheriff Harold R. Presley

Dear Ms. Burroughs:

On July 17, 2001, the Public Safety Officers' Benefits (PSOB) office received information regarding the death of Sheriff Presley. On July 19, we initiated the claim for benefits and sent you a guidance letter indicating what documentation needed to be submitted in order for us to process this case. As of today, we have not received any of the requested materials.

You submitted a completed questionnaire indicating that Sheriff Presley had three adult children between the ages of 22 and 29, as well as one living parent. According to the order of priority of beneficiaries (28 C.F.R. 32.10), if there is no surviving spouse then the PSOB death benefit is paid to the surviving children in equal shares. With regards to the PSOB Program, a child is defined as either 18 years of age or under or between ages 19 and 23 and pursuing a full-time course of study in an institution such as a college, university, or vocational school (28 C.F.R. 32.2(v)(x)). Therefore, the only possible beneficiary in this instance is Sheriff Presley's daughter, Jada Presley. As stated above, Ms. Presley's eligibility is dependent on whether she was enrolled in an educational program when her father died. If she was in school, the guidance letter of July 19 states what materials must be submitted to verify this.

If Ms. Presley was not in school, then Christine Roberts, Sheriff Presley's surviving parent at the time of his death, would be the only other eligible beneficiary for PSOB benefits. However, we have learned that Mrs. Roberts has recently passed away. As a result, if Ms. Presley was not in school then there are no eligible beneficiaries and the claim will be closed.

EXHIBIT
tabbies
F

I would appreciate you contacting me with information pertaining to this matter as soon as possible. I can be reached at 1-888-744-6513 or (202) 514-4138, or at the address below. Please refer to PSOB Claim #01-192.

Public Safety Officers' Benefits Office
Bureau of Justice Assistance
810 Seventh St., N.W.
Washington, D.C. 20531

Attention: Eric Martin

Sincerely,

Eric J. Martin
Benefits Specialist

cc: Charlene Presley
Jimmy D. Shelton

Enclosure

********************
*** RX REPORT ***
********************

RECEPTION OK

| | |
|---|---|
| TX/RX NO | 8110 |
| CONNECTION TEL | 662 841 9044 |
| SUBADDRESS | |
| CONNECTION ID | |
| ST. TIME | 06/27 15:55 |
| USAGE T | 00'59 |
| PGS. | 2 |
| RESULT | OK |

EXHIBIT G

COPY

PHELPS DUNBAR LLP
COUNSELORS AT LAW

New Orleans, LA
Baton Rouge, LA
Houston, TX
London, England

One Mississippi Plaza
201 South Spring Street • Seventh Floor
Tupelo, Mississippi 38804
P. O. Box 1220
Tupelo, Mississippi 38802-1220
(662) 842-7907 • Fax (662) 842-3873

www.phelpsdunbar.com

Jackson, MS
Tupelo, MS
Gulfport, MS
Tampa, FL

LAWRENCE "LARRY" MAGDOVITZ
Admitted in Mississippi and Tennessee
Direct (662) 690-8166
magdovil@phelps.com

July 2, 2002

17954.1

**VIA FEDERAL EXPRESS (TRACKING NO. 7918 7569 7654 )**

Carol Winfield
Bureau of Justice Assistance
Public Safety Officers' Benefits Office
810 Seventh Street, N.W.
Washington, D.C. 20531

Re: Sheriff Harold Ray Presley, PSOB Claim #01-192

Dear Ms. Winfield:

Pursuant to the conversations this office has had with Eric Martin in the Public Safety Officers Benefits Office, we request that your office either accept or deny in writing the Public Safety Officers' Benefits (PSOB) for the death in the line of duty of Sheriff Harold Ray Presley. We believe the PSOB claim should be payable to Christine Roberts, as the surviving parent of Sheriff Presley. Ms. Roberts survived the death of her son in the line of duty and is therefore entitled to the PSOB grant. We outline the facts and law below in support of our belief.

On July 6, 2001, around midnight, the Lee County Sheriff's Department was conducting a roadblock check point and a vehicle turned around to avoid the roadblock. A Lee County Sheriff's deputy made a traffic stop on the suspect vehicle at which time the driver, Billy Stone, fired a gun at the deputy. The Sheriff's Department gave chase with Sheriff Presley directly behind the suspect vehicle. Mr. Stone crashed the vehicle and fled into some surrounding woods. At approximately 4:15 a.m. on July 6, 2001, Sheriff Presley, Deputy Jack Tate and a homeowner entered a shop building behind the homeowner's residence. Mr. Stone was hiding inside of the building and began shooting at the Sheriff, Deputy Tate and the homeowner. The homeowner was wounded and Mr. Stone was shot once and later died at the scene. Sheriff Presley received a total of six (6) gunshot wounds in an exchange of gunfire with Mr. Stone and was airlifted to North Mississippi Medical Center where he was pronounced dead at 5:31 a.m. on July 6, 2001.

TO:137885.1

EXHIBIT
tabbies
G

On July 19, 2001 the PSOB office initiated the claim for benefits and sent a guidance letter to Janet Burroughs at the Lee County Sheriff's Department indicating what documentation needed to be submitted. On September 7, 2001 Christine Roberts, Sheriff Presley's mother, passed away. In a letter from Eric Martin, Benefits Specialist with the PSOB office, dated October 12, 2001, Mr. Martin stated that the only eligible beneficiary out of Sheriff Presley's children was Jada Presley, but only if she was enrolled in an educational program when her father died. Mr. Martin goes on to say that if Jada Presley was not in school then the only other eligible beneficiary was Christine Roberts, "Sheriff Presley's surviving parent at the time of his death". The letter then stated that the PSOB office recently learned of Mrs. Roberts's death and unless Jada was in school there were no eligible beneficiaries and the claim will be closed.

The regulations covering Public Safety Officers' Death and Disability Benefits state that when a public safety officer dies in the line of duty, the Bureau of Justice Assistance will pay a benefit of $100,000. 28 C.F.R. § 32.3(a) (2001). "Line of Duty" is defined in 28 C.F.R. § 32.2(c) as "Any action which an officer whose primary function is crime control is obligated to perform". 28 C.F.R. § 32.2(c) (2001). The benefit is paid to beneficiaries in the order listed in Section 32.10(a) which ends with the beneficiary class of surviving parent(s). 28 C.F.R. § 32.10(a)(4) (2001). Nothing in Subpart A of Part 32 defines what the term "surviving" means. Turning to Black's Law Dictionary, "surviving" is defined as "Remaining alive. Living beyond the life of another or beyond the happening of some event so as to be entitled to a distribution of property or income." BLACK'S LAW DICTIONARY 1446 (6th Ed. 1990). A "survivor" is defined as "One who survives another; one who outlives another; one who lives beyond some happening; one of two or more persons who lives after the death of the other or others. BLACK'S LAW DICTIONARY 1446 (6th Ed. 1990).

It is clear that Sheriff Presley's untimely demise was in the line of duty and that a benefit should be paid to eligible beneficiaries. Ms. Roberts qualified as an eligible beneficiary at the time of Sheriff Presley's death because she was alive and she did survive her son. There is nothing in the Code of Federal Regulations (CFR) that states that an eligible beneficiary must file their claim before the beneficiary dies. But even if it did, by your own letter you state that Ms. Roberts's claim was initiated on July 19, 2001 when the PSOB questionnaire was submitted to the PSOB office by Janet Burroughs and on July 19, 2001 Ms. Roberts was still alive.

The CFR states that a claim must be filed within a year of the death of the public safety officer. 28 C.F.R. § 32.20(c) (2001). Furthermore, the claim can be filed by the legal representative of an eligible beneficiary. 28 C.F.R. § 32.19(a) (2001). In conclusion, we see no legal grounds, statutory, regulatory or otherwise, for the Bureau's decision to deny the PSOB claim of Christine Roberts represented now through her estate as the eligible beneficiary of Sheriff Presley.

TO:137885.1

If you have any questions please contact this office at (662) 842-7907.

Sincerely,

Lawrence "Larry" Magdovitz

Lmii:lm
Enclosures
cc: Patrick Ray Presley
Bradford E. Presley
Jada Hardin Presley

TO:137885.1

EXHIBIT E

U.S. Department of Justice

Office of Justice Programs

*Bureau of Justice Assistance*

---

*Washington, D.C. 20531*

AUG 19 2002

RECEIVED AUG 26 2002 PHELPS DUNBAR, L.L.P.

Lawrence Magdovitz, Esq.
One Mississippi Plaza
201 South Spring Street, 7th Floor
Tupelo, Mississippi 38804

Re: Sheriff Harold R. Presley, PSOB claim #01-192

Dear Mr. Magdovitz:

Pursuant to our conversation, please find enclosed the Public Law 42 USC 3796 (a) which states who will be the recipients of the Public Safety's Officers' Benefits death benefits.

If you have further questions, please call this office at (202) 307-0635 or 1 (888) 744-6513.

Sincerely,

Marion C. Winfield
Director
Office of Benefits

Attachment

EXHIBIT
H

PUBLIC SAFETY OFFICERS' DEATH BENEFITS
CHAPTER 46 - SUBCHAPTER XII - PART A
[TITLE I - PART L - SUBPART 1]

*42 USC § 3796* **[Sec. 1201] Payment of death benefits**

(a) Amount; recipients. In any case in which the Bureau of Justice Assistance (hereinafter in this subchapter referred to as the "Bureau") determines, under regulations issued pursuant to this subchapter, that a public safety officer has died as the direct and proximate result of a personal injury sustained in the line of duty, the Bureau shall pay a benefit of $100,000, adjusted in accordance with subsection (h) of this section, as follows:

(1) if there is no surviving child of such officer, to the surviving spouse of such officer;

(2) if there is a surviving child or children and a surviving spouse, one- half to the surviving child or children of such officer in equal shares and one-half to the surviving spouse;

(3) if there is no surviving spouse, to the child or children of such officer in equal shares; or

(4) if none of the above, to the parent or parents of such officer in equal shares.

(b) Benefits for permanent and total disability. In accordance with regulations issued pursuant to this subchapter [part], in any case in which the Bureau determines that a public safety officer has become permanently and totally disabled as the direct result of a catastrophic injury sustained in the line of duty, the Bureau shall pay, to the extent that appropriations are provided, the same benefit in any year that is payable under subsection (a) of this section in such year, adjusted in accordance with subsection (h) of this section, to such officer: Provided, That the total annual benefits paid under this subsection may not exceed $5,000,000. For the purposes of making these benefit payments, there are authorized to be appropriated for each fiscal year such sums as may be necessary: Provided further, That these benefit payments are subject to the availability of appropriations and that each beneficiary's payment shall be reduced by a proportionate share to the extent that sufficient funds are not appropriated.

(c) Interim benefit payment. Whenever the Bureau determines upon showing of need and prior to final action that the death of a public safety officer is one with respect to which a benefit will probably be paid, the Bureau may make an interim benefit payment not exceeding $3,000 to the individual entitled to receive a benefit under subsection (a) of this section.

(d) Deduction of interim payment. The amount of an interim payment under subsection (c) of this section shall be deducted from the amount of any final benefit paid to such individual.

(e) Repayment of interim payment; waiver. Where there is no final benefit paid, the recipient of any interim payment under subsection (c) of this section shall be liable for repayment of such amount. The Bureau may waive all or part of such repayment, considering for this purpose the hardship which would result from such repayment.

(f) Reductions from final benefit payment. The benefit payable under this subchapter [part] shall be in addition to any other benefit that may be due from any other source, except--

(1) payments authorized by section 12(k) of the Act of September 1, 1916, as amended (D.C.Code, sec. 4-622); or

(2) benefits authorized by section 8191 of Title 5. Such beneficiaries shall only receive benefits under such section 8191 that are in excess of the benefits received under this subchapter.

(g) Execution or attachment prohibited. No benefit paid under this subchapter [part] shall be subject to execution or attachment.

(h) Consumer Price Index adjustment. On October 1 of each fiscal year beginning after June 1, 1988, the Bureau shall adjust the level of the benefit payable immediately before such October 1 under subsection (a) of this section, to reflect the annual percentage change in the Consumer Price Index for All Urban Consumers, published by the Bureau of Labor Statistics, occurring in the 1-year period ending on June 1 immediately preceding such October 1.

(i) Amount payable determined as of date of death. The amount payable under subsection (a) of this section with respect to the death of a public safety officer shall be the amount payable under subsection (a) of this section as of the date of death of such officer.

(j) Limitations on benefits.

(1) No benefit is payable under this subchapter with respect to the death of a public safety officer if a benefit is paid under this subchapter with respect to the disability of such officer.

(2) No benefit is payable under this subchapter with respect to the disability of a public safety officer if a benefit is payable under this subchapter with respect to the death of such public safety officer.

*42 USC § 3796a* **[Sec. 1202] Limitations on benefits**

No benefit shall be paid under this subchapter [part]--

(1) if the death or catastrophic injury was caused by the intentional misconduct of the public safety officer or by such officer's intention to bring about his death or catastrophic injury;

(2) if the public safety officer was voluntarily intoxicated at the time of his death or catastrophic injury;

(3) if the public safety officer was performing his duties in a grossly negligent manner at the time of his death or catastrophic injury;

(4) to any individual who would otherwise be entitled to a benefit under this subchapter if such individual's actions were a substantial contributing factor to the death or catastrophic injury of the public safety officer; or

(5) to any individual employed in a capacity other than a civilian capacity.

*42 USC § 3796a-1* **[Sec. 1203] National programs for families of public safety officers who have died in line of duty**

The Director is authorized to use no less than $150,000 of the funds appropriated for this subchapter [part] to maintain and enhance national peer support and counseling programs to assist families of public safety officers who have died in the line of duty.

*42 USC § 3796b* **[Sec. 1204] Definitions**

As used in this subchapter [part]--

(1) "catastrophic injury" means consequences of an injury that permanently prevent an individual from performing any gainful work;

(2) "child" means any natural, illegitimate, adopted, or posthumous child or stepchild of a deceased public safety officer who, at the time of the public safety officer's death, is--

(i) 18 years of age or under;

(ii) over 18 years of age and a student as defined in section 8101 of Title 5; or

(iii) over 18 years of age and incapable of self-support because of physical or mental disability;

(3) "firefighter" includes an individual serving as an officially recognized or designated member of a legally organized volunteer fire department and an officially recognized or designated public employee member of a rescue squad or ambulance crew.

(4) "intoxication" means a disturbance of mental or physical faculties resulting from the introduction of alcohol into the body as evidenced by--

(i) a post-mortem blood alcohol level of .20 per centum or greater; or

(ii) a post-mortem blood alcohol level of at least .10 per centum but less than .20 per centum unless the Bureau receives convincing evidence that the public safety officer was not acting in an intoxicated manner immediately prior to his death; or resulting from drugs or other substances in the body;

(5) "law enforcement officer" means an individual involved in crime and juvenile delinquency control or reduction, or enforcement of the laws, including, but not limited to, police, corrections, probation, parole, and judicial officers;

(6) "public agency" means the United States, any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, the Virgin Islands of the United States, Guam, American Samoa, the Trust Territory of the Pacific Islands, the Commonwealth of the Northern Mariana Islands, and any territory or possession of the United States, or any unit of local government, department, agency, or instrumentality of any of the foregoing; and

(7) "public safety officer" means an individual serving a public agency in an official capacity, with or without compensation, as a law enforcement officer, a firefighter, or rescue squad or ambulance crew.

*42 USC § 3796c* [Sec. 1205] **Administrative provisions**

(a) Rules, regulations, and procedures. The Bureau is authorized to establish such rules, regulations, and procedures as may be necessary to carry out the purposes of this subchapter [part]. Such rules, regulations, and procedures will be determinative of conflict of laws issues arising under this subchapter [part]. Rules, regulations, and procedures issued under this subchapter [part] may include regulations governing the recognition of agents or other persons representing claimants under this subchapter before the Bureau. The Bureau may prescribe the maximum fees which may be charged for services performed in connection with any claim under this subchapter before the Bureau, and any agreement in violation of such rules and regulations shall be void.

(b) Use of State and local administrative and investigative assistance. In making determinations under section 3796 of this title, the Bureau may utilize such administrative and investigative assistance as may be available from State and local agencies. Responsibility for making final determinations shall rest with the Bureau.

(c) Use of funds to conduct appeals of claims. Notwithstanding any other provision of law, the Bureau is authorized to use appropriated funds to conduct appeals of public safety officers' death and disability claims.

EXHIBIT I

U.S. Department of Justice

Office of Justice Programs

*Bureau of Justice Assistance*

*Washington, D.C. 20531*

# PUBLIC SAFETY OFFICERS' BENEFITS ACT CLAIM DETERMINATION

**Case Number:** 2001-192

**Full Name:** Harold Ray Presley

**Title:** Sheriff

**Department/Agency:** Lee County Sheriff's Department

**City, State, Zip Code:** Tupelo, Mississippi 38804

**Case Summary:** On July 5, 2001, officers from the Lee County Sheriff's Department were conducting a roadblock check point and saw a pickup truck turn around before reaching their location. When the officers attempted to stop the vehicle, a chase was initiated and Sheriff Harold Ray Presley, age 52, joined the pursuit to catch the fleeing pickup. After an exchange of gunfire, the suspect crashed into a group of trees and ran from the scene. A search was made of a nearby property and, upon entering a building behind the owner's residence, Sheriff Presley and the men accompanying him were fired upon by the suspect. Sheriff Presley was hit several times and subsequently transported to the North Mississippi Medical Center, where he was pronounced dead of multiple gunshot wounds to the body.

**Determination:** Based on the Claim for Death Benefits submitted by his adult son, Patrick Presley, and an analysis of the evidence presented in this case, the Bureau of Justice Assistance (BJA) has determined that the death of Sheriff Harold Ray Presley **is not covered** under the Omnibus Crime Control and Safe Streets Act of 1968 (42 U.S.C. 3796), as amended, and 28 C.F.R. Part 32.

On July 16, 2001, basic information concerning Sheriff Presley's death was received, and on July 19, 2001, the Lee County Sheriff's Department was sent a guidance letter indicating the documents that were needed in order for the claim to be processed.

For officer deaths prior to September 11, 2001, the Public Safety Officers' Benefits (PSOB) Act and regulations limit the eligible beneficiaries for PSOB benefits to the officer's current spouse and children or, absent these, the officer's parents. In order to be eligible, the children had to be, on the date of the officer's death, either 18 years of age or younger or between the ages of 19 and 22 and a full-time student (42 U.S.C. 3796(a), 28 C.F.R. 32.2(x)). As noted in the information

EXHIBIT
tabbies
I

submitted by the Lee County Sheriff's Department, Sheriff Presley was not married at the time he was killed. Of his three children, sons Bradford and Patrick were, respectively, 27 and 29 years of age. Daughter Jada was 22 and would therefore be an eligible beneficiary if she had been enrolled as a full-time student at an eligible educational or training institution. Also identified as a possible beneficiary was Sheriff Presley's mother, Christine Roberts. (The PSOB office was told that Sheriff Presley's father had previously passed away, though no death certificate was provided.)

On September 14, 2001, it was learned that Ms. Roberts had passed away a week earlier. Shortly thereafter, the PSOB office notified the sheriff's department that, in addition to not yet receiving any of the requested documentation, there would be no eligible beneficiaries and the claim would be closed if Jada was not a full-time student when her father passed away. It was subsequently discovered that Jada was, in fact, not a student, and on February 22, 2002, the claim was administratively closed. The stated reason for this action was that required documentation–most notably a Claim for Benefits form–was never submitted and an eligible beneficiary was not identified.

It was not until July 29, 2002, that materials necessary to support a claim, including a death certificate, autopsy and statement of circumstance regarding Sheriff Presley's death, were received. Also received was a Report of Public Safety Officer's Death form and a Claim for Benefits listing the officer's three adult children as beneficiaries, signed by Patrick Presley and dated August 15, 2001. The former, which is meant to be submitted by the officer's public agency and signed by the agency head, also listed the three children but was unsigned.

Although this case was previously closed, this formal determination is now being issued to deny Patrick Presley's claim. We conclude that there is no eligible claimant and, as a result, no benefits to be paid. Neither Patrick Presley nor his siblings identified in his claim are eligible because none is a "child" for purposes of the PSOB Program. Christine Roberts never submitted a claim and never received a PSOB award before she died. In such circumstances, Ms. Roberts' estate may not assert any cognizable interest in benefits provided by the PSOB Program. Moreover, even upon a formal claim, no benefits would be awarded to Ms. Roberts' estate because to do otherwise would be to subvert the very purpose of the PSOB Program, which is to provide a measure of economic security for the officer's eligible beneficiaries, such as a dependent spouse, children or parents.

PSOB Claim No. 2001-192 Sheriff Harold Ray Presley

**Prepared by:** Eric J. Martin, Benefits Specialist, Office of Benefits — Date: 12/19/02

**Approved by:** Michael Guerriere, Chief, Payments and Benefits Division — Date: 12/23/02

**Concurrence by:** Office of General Counsel — Date: 12/30/02

19