**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**EVA P.WHITE, AS ADMIINISTRATRIX OF THE ESTATE OF CHRISTINE H. ROBERTS** — **PLAINTIFF**

**VS.**

**NO. 1:2005cv1236C**
**(Judge Baskir)**
**(cc: Judge Horn)**

**THE UNITED STATES OF AMERICA** — **DEFENDANT**

# PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

William M. Beasley
PHELPS DUNBAR, LLP
Seventh Floor
One Mississippi Plaza
201 South Spring Street
Post Office Box 1220
Tupelo, MS 38802-1220
Telephone: (662) 842-7907
Facsimile: (662) 842-3873

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................ i

TABLE OF AUTHORITIES ........................................ ii

INTRODUCTION ........................................ 1

QUESTIONS PRESENTED ........................................ 3

STATEMENT OF THE CASE ........................................ 3

STATEMENT OF FACTS ........................................ 5

LEGAL ARGUMENT ........................................ 6

I. Christine H. Roberts, the Mother of Public Safety Officer Sheriff Harold Ray Presley, Did File a Claim for Benefits Pursuant to the Public Safety Officers' Benefits Act. Therefore, She Is Eligible to Receive Compensation for Her Son's Death in the Line of Duty........................................ 7

II. The Fact that Christine H. Roberts Died Prior to Receiving Any Benefits Pursuant to the Public Safety Officers' Benefits Act Does Not Render Her Ineligible to Receive Benefits Because the Act Does Not Prohibit Payments to an Individual's Estate. ........................................ 9

III. The Estate of Christine H. Roberts Has a Cognizable Legal Interest in Benefits Resulting from the Death of Sheriff Harold Ray Presley. ........................................ 13

CONCLUSION ........................................ 15

CERTIFICATE OF SERVICE ........................................ 17

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438 (2002)....11, 12

*Board of Regents v. Roth*, 408 U.S. 564 (1972)....14

*Caminetti v. United States*, 242 U.S. 470 (1917)....12

*Estate of Coward v. Nicklos Drilling Co.*, 505 U.S. 469 (1992)....12

*Doe v. U.S.*, 66 Fed. Cl. 165 (Fed. Cir. 2005)....6

*Greeley v. U.S.*, 30 Fed. Cl. 721 (1994)....7

*Hoffman v. Warwick*, 909 F.2d 608 (1st Cir. 1990)....13, 14, 15

*Int'l Bhd. of Elec. Workers, Local Union No. 474 v. NLRB*, 814 F.2d 697 (D.C. Cir. 1987)....12

*Johnson v. United States*, 529 U.S. 694 (2000)....12

*Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997)....11

*Shannon v. United States*, 512 U.S. 573 (1994)....12

*TRW Inc. v. Andrews*, 534 U.S. 19 (2001)....11

*United States v. Ron Pair Enterps., Inc.*, 489 U.S. 223 (1989)....12

*Weddel v. Sec'y of Dep't of Health and Human Servs.*, 23 F.3d 388 (Fed. Cir.)....12

## STATUTES

42 U.S.C. § 3796....1, 3, 4, 8, 10, 13

28 C.F.R. § 32.10(a)....4, 10

28 C.F.R. § 32.19(a)....9

28 C.F.R. § 32.2....10

28 C.F.R. § 32.20(b)....4, 7, 8, 9

28 C.F.R. § 32.4....15

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

**EVA P.WHITE, AS ADMIINISTRATRIX OF THE ESTATE OF CHRISTINE H. ROBERTS** — **PLAINTIFF**

**VS.** — **NO. 1:2005cv1236c (Judge Baskir) (cc: Judge Horn)**

**THE UNITED STATES OF AMERICA** — **DEFENDANT**

---

**PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

Pursuant to Rule 56.1 of the Rules of the United States Court of Federal Claims, Plaintiff Eva P. White, as Administratrix of the Estate of Christine H. Roberts (hereinafter "Plaintiff" or "Mrs. White"), files her Motion for Judgment on the Administrative Record. Plaintiff relies upon her Complaint, the following brief, Plaintiff's Statement of Facts filed contemporaneously with this brief pursuant to Rule 56.1(b)(2) of the Rules of the United States Court of Federal Claims, and the administrative record previously filed and supplemented by the parties.

**INTRODUCTION**

In his position as Sheriff of Lee County, Mississippi, Harold Ray Presley was a public safety officer as defined by 42 U.S.C. § 3796.[1] Sheriff Presley was shot and killed in the line of duty on July 6, 2001. On July 16, 2001, Janet Burroughs, an employee of the Lee County Sheriff's Department, initiated a claim for Public Safety Officers' Benefits (hereinafter "PSOB") on behalf of Sheriff Presley's beneficiaries by submitting a death benefits questionnaire to the PSOB program office. On July 19, 2001, a letter from the PSOB office was sent to the Lee

---

[1] At no level in this process has either Defendant or the Bureau of Justice Assistance ever denied that Sheriff Presley was a public safety officer who was killed in the line of duty for purposes of 42 U.S.C. § 3796. Those facts are uncontroverted.

County Sheriff's Department indicating what documents were needed to process a claim for benefits on behalf of Sheriff Presley's beneficiaries. On September 7, 2001, Christine H. Roberts, Sheriff Presley's mother, died. In a letter dated October 12, 2001, the PSOB office issued an initial PSOB death benefit denial. In December 2002, the PSOB office issued a PSOB claim determination, also denying benefits. On March 18, 2004, a PSOB hearing officer affirmed the death benefit denial, and on February 17, 2005, the Director of the Bureau of Justice Assistance released a final agency decision which also affirmed the findings of the PSOB office and the PSOB hearing officer.

Plaintiff now seeks a review of the administrative decision of the Bureau of Justice Assistance denying her, as Administratrix of the Estate of her mother, Christine H. Roberts, benefits under the Public Safety Officer's Benefits Act (hereinafter "PSOBA"). Defendant has wrongfully denied these benefits to Plaintiff by arguing that Plaintiff's mother, Christine H. Roberts, did not submit a PSOB claim prior to her death. Defendant further contends that even if Mrs. Roberts had submitted a formal claim prior to her death, Mrs. Roberts' estate should not now receive those benefits because no benefits should be awarded to individuals' estates.

No statute, regulation, or agency interpretation prohibits an award of PSOB benefits to an estate. The regulations covering Public Safety Officers' Death and Disability Benefits require only that an eligible beneficiary survive the public safety officer who dies in the line of duty. There is no requirement mandating that an eligible beneficiary file a claim before that beneficiary dies. Even if such a requirement did exist, however, Mrs. Roberts' claim was initiated on July 16, 2001, when the PSOB death benefits questionnaire was submitted to the PSOB office by Janet Burroughs, an employee of the Lee County Sheriff's Department. There is no legal basis for the denial of the PSOB claim of Christine H. Roberts.

Accordingly, Plaintiff brings this Motion for Judgment on the Administrative Record. There is no dispute that Sheriff Harold Ray Presley was a public safety officer serving in an official capacity who was killed in the line of duty. Christine H. Roberts, the Sheriff's mother, was his only eligible beneficiary at the time of his death. Because Mrs. Roberts' identity was submitted to the PSOB office prior to her death, she satisfied the requirements for filing a claim for benefits. Moreover, because there is no statute or regulation prohibiting the payment of benefits to an estate, Sheriff Presley's death benefits should now be paid into the Estate of Christine H. Roberts. After a review of the facts supporting Plaintiff's claim for benefits and the arbitrary and capricious action of Defendant in attempting to deny those benefits, this Court should rule in Plaintiff's favor and award PSOB death benefits to the Estate of Christine H. Roberts.

## QUESTIONS PRESENTED

I. Whether the Death Benefits Questionnaire submitted by the Lee County Sheriff's Department to the PSOB Office prior to Mrs. Robert's death constitutes the filing of a claim for PSOB Act benefits on behalf of Mrs. Roberts.

II. Whether the PSOB Act authorizes the payment of benefits to an estate.

III. Whether the PSOB Act authorizes the payment of benefits to the estate of Mrs. Roberts.

## STATEMENT OF THE CASE

In 1976, Congress enacted the Public Safety Officers' Benefits Act ("PSOBA") to provide benefits to qualified claimants of public safety officers who have been injured or killed in the line of duty. 42 U.S.C. § 3796. The PSOBA specifically states: "In any case in which the Bureau of Justice Assistance determines, under regulations issued pursuant to this subchapter,

that a public safety officer has died as the direct and proximate result of a personal injury sustained in the line of duty, the Bureau shall pay a benefit of $250,000." 42 U.S.C. § 3796(a).[2]

As is relevant to this case, the PSOBA states that the benefit is paid to beneficiaries in the order listed in 28 C.F.R. § 32.10(a), which ends with the beneficiary class of "surviving parents." Mrs. Roberts, the mother of Sheriff Harold Ray Presley, qualifies as an eligible beneficiary at the time of her son's death, because she was alive and, thus, did survive him. Moreover, 28 C.F.R. § 32.20(b) states that "Where an individual files OJP Form 3650/5 for death benefits, or the disability benefits claim form, or other written statement with the Bureau which indicates an intention to claim benefits, the filing of such written statement shall be considered to be the filing of a claim for benefits." By submitting the death benefits questionnaire, which listed Mrs. Roberts as a beneficiary, to the PSOB office, Mrs. Roberts met the requirements for the filing of a claim for benefits.

Mrs. Roberts was a surviving parent of a public safety officer slain in the line of duty, and she filed a claim for PSOB benefits within days of her son's untimely death. Accordingly, there is not substantial evidence supporting the denial of her death benefits, and this Court should order that those benefits be immediately awarded to her Estate.

[2] At the time of Sheriff Presley's death, the amount of that benefit was $100,000.

## STATEMENT OF FACTS

On July 6, 2001, around midnight, the Lee County Sheriff's Department was conducting a roadblock checkpoint, and a vehicle turned around to avoid the roadblock. A.R. 18, 31. A Lee County Sheriff's deputy then made a traffic stop on the suspect vehicle at which time the driver, Billy Stone, fired a gun at the deputy. A.R. 18, 31. The Sheriff's Department gave chase, with Sheriff Presley directly behind the suspect's vehicle. A. R. 18, 31. Mr. Stone eventually crashed the vehicle and fled into some surrounding woods. A. R. 18, 31. At approximately 4:15 a.m. on July 6, 2001, Sheriff Presley, Deputy Jack Tate, and a homeowner entered a shop building behind the homeowner's residence. A. R. 18, 31. Mr. Stone was hiding inside the building and began shooting at the Sheriff, Deputy Tate, and the homeowner. A. R. 18, 31. The homeowner was wounded, and Mr. Stone was shot once and later died at the scene. Sheriff Presley received a total of six (6) gunshot wounds in an exchange of gunfire with Mr. Stone and was airlifted to North Mississippi Medical Center, where he was pronounced dead at 5:31 a.m. on July 6, 2001. A.R. 18, 31. At the time of his death, Sheriff Presley was survived by his mother, Christine Roberts, his three children, and several siblings, including Eva P. White, who is now serving as Administratrix of his mother's estate. A.R. 1-2, 10.

On July 16, 2001, Janet Burroughs, an employee of the Lee County Sheriff's Department, completed the PSOB death benefits questionnaire and submitted the document to the Bureau of Justice Assistance. A.R. 1-3. On that questionnaire, Ms. Burroughs noted that Sheriff Presley had three (3) surviving children: Patrick Ray Presley, age 29; Bradford E. Presley, age 27; and Jada Hardin Presley, age 22. A.R. 1, 2. Ms. Burroughs also indicated that Sheriff Presley's mother, Christine H. Roberts, survived him. A.R. 2. On July 19, 2001, the PSOB office

forwarded a letter to Ms. Burroughs providing instructions on how to process the claim for benefits. A.R. 4, 5.

On September 7, 2001, Christine H. Roberts, Sheriff Presley's mother, passed away. In a letter dated October 12, 2001, Eric Martin, Benefits Specialist with the PSOB office, stated that the only eligible beneficiary out of Sheriff Presley's children was Jada Presley, but only if she were enrolled in an educational program when her father died. A.R. 8, 9. Because Miss Presley was not enrolled in school at the time of her father's death, Mr. Martin noted that the only other eligible beneficiary was Christine Roberts, Sheriff Presley's surviving parent at the time of his death. A.R. 8, 9. Mr. Martin's letter went on to state, however, that the PSOB office had recently learned of Mrs. Roberts' death and that unless Jada Presley had been enrolled in school, there were no eligible beneficiaries and the claim would be closed. A.R. 8, 9.

In December 2002, the PSOB office issued a PSOB claim determination denying death benefits to Mrs. Roberts. A.R. 31-33. On March 18, 2004, a PSOB hearing officer affirmed that death benefit denial. A.R. 141-146. On February 17, 2005, the Director of the Bureau of Justice Assistance released a final agency decision which also affirmed the findings of the PSOB office and the PSOB hearing officer. A.R. 154-161. That final agency decision was not forwarded to the Plaintiff until August 2005, however, as it was subject to final review by the director. It is from that final agency decision that Plaintiff appeals.

## **LEGAL ARGUMENT**

The standard of review on a Motion for Judgment on the Administrative Record is, given all the disputed and undisputed facts, whether the plaintiff has met the burden of proof to show that the decision was not in accordance with the law. *Doe v. U.S.*, 66 Fed. Cl. 165, 174 (Fed. Cir. 2005), *citing Bannum, Inc. v. U.S.*, 404 F.3d 1346, 1357 (Fed. Cir. 2005). The standard of review of an administrative denial of benefits under the PSOBA generally is limited to

determining, "(1) whether there has been substantial compliance with the statutory and implementing regulation; (2) whether there has been any arbitrary and capricious action on the part of the Government Officials involved; and (3) whether there was substantial evidence supporting the decision." *Greeley v. U.S.*, 30 Fed. Cl. 721, 728 (1994). Furthermore, to make a finding of whether the agency action was arbitrary, capricious, or otherwise not in accordance with the law, "the court must consider whether the decision was based on consideration of the relevant factors and whether there has been a clear error of judgment." *Id.* at 729.

**I. Christine H. Roberts, the Mother of Public Safety Officer Sheriff Harold Ray Presley, Did File a Claim for Benefits Pursuant to the Public Safety Officers' Benefits Act. Therefore, She Is Eligible to Receive Compensation for Her Son's Death in the Line of Duty.**

28 C.F.R. § 32.20 states, in pertinent part, "Where an individual files OJP form 3650/5 for death benefits or the disability benefits claim form, or other written statement with the Bureau which indicates an intention to claim benefits, the filing of such written statement shall be considered to be the filing of a claim for benefits." 28 C.F.R. § 32.20. As stated previously in this brief, Sheriff Harold Ray Presley was killed in the line of duty on July 6, 2001. A.R. 18, 31. On July 16, 2001, the Lee County Sheriff's office submitted a death benefits questionnaire to the Bureau of Justice Assistance. A.R. 1-3. The information contained on that questionnaire included Sheriff Presley's name, title, social security number, date of birth, date of death, location of death, and cause of death. A.R. 1-3. The document also indicated that Sheriff Presley was divorced, and that he was survived by his three (3) children and his mother, Christine H. Roberts. The form submitted on behalf of Sheriff Presley's beneficiaries is not only a written document, it is a form created by the Bureau of Justice Assistance and it contains the following statement, "Please submit the following information to enable us to request supporting documentation to initiate your claim." The language on the questionnaire itself, combined with

28 C.F.R. § 32.20's simple requirement that beneficiaries file only a "written statement with the Bureau which indicates an intention to claim benefits," makes clear that the submission of the death benefits questionnaire to the PSOB office is sufficient to constitute the filing of a claim. Moreover, Sheriff Presley's beneficiaries did not cease their communication with the PSOB office after the submission of the death benefits questionnaire. As additional information became available, Sheriff Presley's beneficiaries, on July 29, 2002, forwarded all of the additional materials necessary to process the claim completely, including a death certificate, autopsy, and statement of circumstances to the PSOB office.

To carry out the purposes of the program, the Bureau of Justice Assistance is authorized under 42 U.S.C. § 3796c, to establish rules, regulations, and procedures necessary to carry out the purposes of the program. It is within the scope of the program and within the authority of the Bureau to verify that certain individuals are, in fact, eligible beneficiaries. In the immediate case, once the death benefits questionnaire was submitted, the Presley family and Sheriff Presley's public safety organization, the Lee County Sheriff's Department, had insured that a claim was initiated on his behalf.

The regulations promulgated regarding what constitutes filing a claim for benefits appear to be intentionally broad. In fact, as noted above, the regulations provide that any written statement submitted to the Bureau which indicates an intention to claim benefits shall be considered to be the filing of a claim for benefits. 28 C.F.R. § 32.20. That language has not been interpreted by courts, likely because "written statement" is a fairly commonsensical term. The death benefits questionnaire which listed all possible beneficiaries of Sheriff Presley, including Mrs. Roberts, is a written document which indicates an intention to claim benefits and, thus, is sufficient to constitute the filing of a claim.

While 28 C.F.R. § 32.20 encourages claimants to submit their claims on OJP form 3650/5, utilization of that form is not required. If the death benefits questionnaire, which itself contained a request from the Department of Justice for specific information so that the agency might process the PSOB claim, is not sufficient to constitute a written statement as required by 28 C.F.R. § 32.20, it is hard to fathom what written statement would qualify under that regulation.

Only days after Sheriff Presley's death, his beneficiaries had forwarded to the Bureau a written statement which indicated their intention to claim benefits. Moreover, as soon as was possible thereafter, those beneficiaries forwarded the other necessary information to the Bureau. Accordingly, Mrs. Roberts did file a claim for PSOB benefits prior to her death.

Although Mrs. Roberts did initiate her claim for PSOB benefits prior to her death, there is no language in the Code of Federal Regulations that states that an eligible beneficiary must file his or her claim before the beneficiary dies. The C.F.R. states only that a claim must be filed within a year of the death of the public safety officer. 28 C.F.R. § 32.20(c). Furthermore, the regulation makes clear that the claim can be filed by the legal representative of an eligible beneficiary. 28 C.F.R. § 32.19(a). While initiating a claim prior to her death was not a requirement, Mrs. Roberts did initiate her claim. Accordingly, there are no legal grounds for the Bureau's argument that she should now be denied benefits because she failed to initiate a claim.

**II. The Fact that Christine H. Roberts Died Prior to Receiving Any Benefits Pursuant to the Public Safety Officers' Benefits Act Does Not Render Her Ineligible to Receive Benefits Because the Act Does Not Prohibit Payments to an Individual's Estate.**

The regulations covering Public Safety Officers' Death and Disability Benefits state that when a public safety officer dies in the line of duty, the Bureau of Justice Assistance will pay a

benefit of $250,000.[3] 42 U.S.C. § 3796(a). The benefit is paid to beneficiaries in the order prescribed by the statute. 42 U.S.C. § 3796(a). Included in that list of beneficiaries is the beneficiary class of "surviving parents". 28 CFR § 32.10(a) and 42 U.S.C. § 3796. Nothing in subpart (a) of Section 32 defines what the term "surviving" means, and the legislative history of the Act is also silent as to any intended definition of "surviving." In *Black's Law Dictionary*, "surviving" is defined simply as "Remaining alive. Living beyond the life of another or beyond the happening of some event so as to be entitled to a distribution of property or income." *Black's Law Dictionary* 1446 (6th Ed. 1990). It is important to note that while subpart (a) does not define "surviving" or list further qualifications for surviving parents, that section contains several requisite factors which children of fallen officers must meet to be eligible to receive benefits, including age limitations and school attendance. No such additional eligibility limitations exist for eligible parents. 28 C.F.R. § 32.2. Had Congress intended to restrict the class of surviving parents to only those parents who survive long enough to receive the benefits, that body could certainly have done so, but did not so elect.

Christine Roberts, the mother of Sheriff Harold Ray Presley, was a surviving parent at the time of Sheriff Presley's death. In fact, she lived nearly two months after her son's death. A.R. 126. The only stipulation that the PSOB regulations and statute require of a surviving parent is that the parent survive the officer who was killed in the line of duty. Neither the statute nor the regulations require that the surviving parent survive the fallen officer for a specified period of time in order to receive the PSOB benefits.

Defendant will surely argue that the PSOBA does not allow a payment of benefits to be made to an individual's estate. In fact, the opposite is true. Nowhere in the Act or in the

---

[3] Although this amount has now been increased, $100,000 was the amount at issue at the time of Sheriff Presley's death.

accompanying regulations is there any prohibition against making a payment of PSOB benefits to an estate. If such a prohibition did exist, however, it would almost certainly be a violation of public policy, as that prohibition would encourage the Bureau purposefully to delay processing claims of sick or elderly beneficiaries because if those beneficiaries died before benefit payments were made, the benefits would not have to be paid into their estates. A rule against paying PSOB benefits to an estate, then, would only encourage dilatory actions by the PSOB office and the Bureau of Justice Assistance.

In its original claim determination memorandum, the Department of Justice stated that PSOB benefits could not be paid into Mrs. Roberts' Estate because the purpose of the PSOBA is to provide a measure of economic security for officers' eligible beneficiaries. That purpose statement was taken from the legislative history of the PSOBA, and the Department argued that because Mrs. Roberts was deceased prior to any award of the funds, payment of the benefits at this time would subvert the purpose of the Act. In fact, however, the legislative history of the Act is not relevant to a determination of whether Mrs. Roberts was an eligible beneficiary.

The first step in statutory construction is "to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450 (2002) (quoting *Robinson v. Shell Oil Co.,* 519 U.S. 337, 340 (1997)). The inquiry ceases "if the statutory language is unambiguous and the 'statutory scheme is coherent and consistent.'" *Id.*(quoting *Robinson v. Shell Oil Co.*, 519 U.S. at 340). In interpreting the plain meaning of a statute, it is the court's duty, if possible, to give meaning to every clause and word of the statute. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001).

When the statute provides a clear answer, the court's analysis is at an end. *See Barnhart v. Sigmon Coal Co., Inc.*, 534 U. S. at 450. Thus, when the "statue's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" *Johnson v. United States*, 529 U.S. 694, 723 (2000) (quoting *United States v. Ron Pair Enterps., Inc.*, 489 U.S. 223, 241, (1989) (quoting *Caminetti v. United States*, 242 U. S. 470, 485 (1917)). In such instances, the court should not consider "conflicting agency pronouncements" or "extrinsic evidence of a contrary intent." *Weddel v. Sec'y of Dep't of Health and Human Servs.*, 23 F. 3d 388, 391 (Fed. Cir.) (citing *Estate of Coward v. Nicklos Drilling Co.*, 505 U. S. 469, 476 (1992).

"[C]ourts have no authority to enforce [a] principl[e] gleaned solely from legislative history that has no statutory reference point.'" *Shannon v. United States*, 512 U. S. 573, 583-84 (1994) (quoting *Int'l Bhd. of Elec. Workers, Local Union No. 474 v. NLRB*, 814 F. 2d 697, 712 (D.C. Cir. 1987).

Because nothing in the statute or accompanying regulations prohibits payment of PSOB benefits into an estate, Defendant's only argument in opposition to the payment of funds to Mrs. Roberts' Estate is that the payment would subvert the purpose of the Act. Because the "purpose" of the Act is taken from the legislative history, however, it is irrelevant to the decision at bar.

Because the statute at hand is plain and unambiguous, there is no basis for examining the legislative intent. In fact, as noted above, courts have no authority to enforce a principle gleaned solely from legislative history when a statute is plain and unequivocal on its face. In the case at bar, the meaning of the statute is clear. If a parent survives a child who is a public safety officer and has been killed in the line of duty, then that parent is entitled to receive benefits. There is no additional requirement that the parent survive the child for a specified period of time, and there are no legal grounds for referring to the legislative history of the Act. Accordingly, Mrs. Roberts

is entitled to receive the statutory PSOB death benefits, regardless of whether those benefits will now be paid to her estate.

The Bureau has argued that because Mrs. Roberts is now deceased, the benefits which would have been paid to her should return to the "pool" of monies to be distributed to other beneficiaries who have lost loved ones in the line of duty. Because Congress has enacted the PSOB statute and has allocated the monies necessary to fund the project, that argument is moot. Congress has mandated that funds always be available to any family when an officer is killed in the line of duty. Thus, awarding benefits to Mrs. Roberts' Estate now will not mean that another family will later be denied benefits.

Neither the statute nor any regulation prohibits the payment of PSOB benefits to an estate. Because Mrs. Roberts was a surviving parent pursuant to 42 U.S.C. § 3796, and because she filed a claim for PSOB benefits, those benefits should now be paid into her Estate.

### III. The Estate of Christine H. Roberts Has a Cognizable Legal Interest in Benefits Resulting from the Death of Sheriff Harold Ray Presley.

On the date of Sheriff Presley's death, Mrs. Roberts had a statutory right, created by federal statute, to receive PSOB benefits. She survived her son, a public safety officer killed in the line of duty. Thus, she should be awarded PSOB benefits. Her interest in those benefits is clear.

In making its decision that Mrs. Roberts' Estate did not have a cognizable interest in PSOB benefits, the Department of Justice relied solely on the finding in *Hoffman v. Warwick*, 909 F. 2d 608, 616 (1st Cir. 1990). The case held that non-contractual employee benefits which a recipient has not yet received, but has a mere expectation of receiving, are not property. *Id.* According to the Department of Justice, Mrs. Roberts has no vested right in the PSOB benefits because she had not received those benefits prior to her death. A.R. 145. The holding in

*Hoffman*, however, is inapplicable to the case at bar. *Hoffman* is a case involving claims of violation of due process, while there is no argument about due process violations in the case at hand. *Id.* at 619. In *Hoffman*, a class action was brought on behalf of numerous employees in Rhode Island who felt they were mistreated and deprived of due process when the Rhode Island legislature repealed a statute that would have offered them seniority in their employment because they were war veterans. *Id.* at 611. In turn, the employees filed suit, alleging that they were denied a proper hearing and were unfairly denied their employee benefits. *Id.* at 613. In *Hoffman*, the veterans and their lawyers argued that they were deprived of their due process because the statute was repealed without providing them a hearing.

As this Court is well aware, on any occasion when a court reviews an alleged deprivation of due process, that court is obligated to look to whether the individual claiming a due process violation was deprived of a property right or liberty interest. *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). If that is not the case, then there can be no denial of due process. *Id.* In *Hoffman*, the court ruled that no liberty interest was at stake and that the mere expectation of receiving benefits was not a property interest. *Hoffman*, 909 F. 2d at 620. Accordingly, the plaintiffs in that case could not claim that they had been denied due process. *Id.* The discussion of the property interest in the benefits in *Hoffman*, however, was relevant only because the plaintiffs had alleged a violation of due process.

In the case at bar, whether there is a property interest in PSOB benefits is irrelevant because Mrs. Roberts' estate is not alleging any sort of violation of due process. Moreover, the PSOB statute has not been repealed, and Mrs. Roberts has not been denied benefits because the law which established the benefits she claims is no longer in effect. Instead, Mrs. Roberts had a vested right to the PSOB benefits when her son was killed in the line of duty and when she

survived him, because for her purposes, the only requirements of the PSOB statute are that she survive her son and that she file a claim for PSOB benefits.

Whether Mrs. Roberts did or did not have a property interest in her PSOB benefits is not relevant in this case because her Estate is not alleging a due process violation. Mrs. Roberts is entitled to a statutory benefit which she has not received. Conversely, the due process violation in *Hoffman* derived from the fact that the legislature repealed the benefits statute without offering any sort of hearing to those people who would have benefited from the statute. For Mrs. Roberts, her denial of benefits has come through an administrative hearing process, not from any action by the legislature.

While Mrs. Roberts certainly had a vested interest in the PSOB benefits because she met the statutory requirements, even if this Court found that she did not, her lack of vested interest does not affect her claim, as Plaintiff does not allege any violation of due process.

**CONCLUSION**

PSOB regulations require only that an eligible beneficiary submit a written statement indicating an intention to claim benefits in order to meet the statutory requirement of "filing a claim." By submitting the PSOB death benefits questionnaire only days after the death of her son, Mrs. Roberts satisfied the filing requirement. Moreover, because no portion of the statute or any related regulation prohibits the payment of PSOB benefits into an Estate, there is no legal basis for Defendant's refusal to pay PSOB benefits into Mrs. Roberts' Estate.

Defendant is obligated by Federal Regulations to err on the side of paying benefits:

> The Bureau shall resolve any reasonable doubt arising from the circumstances of the officer's death . . . in favor of payment of the death or disability benefit.

28 C.F.R. § 32.4.

In denying benefits to Plaintiff, the Bureau did not consider the undisputed facts and record that Mrs. Roberts did survive her son and did file a claim for PSOB benefits. The Bureau's determination and rulings are not based on substantial evidence and ignore the factual record in this case.

This Court should set aside the administrative decisions in this case and order the Bureau to grant PSOBA benefits to Plaintiff, including any applicable interest.

Respectfully submitted, this 12th day of June, 2006.

By: */s/ William M. Beasley*
William M. Beasley
PHELPS DUNBAR, LLP
Seventh Floor
One Mississippi Plaza
201 South Spring Street
Post Office Box 1220
Tupelo, MS 38802-1220
Telephone: (662) 842-7907
Facsimile: (662) 842-3873

**ATTORNEY FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I, William M. Beasley, one of the attorneys for Defendant, do hereby certify that I have this date electronically filed the above and foregoing with the Clerk of the Court, utilizing the ECF system which sent notification of such filing to the following:

Allison Kidd-Miller
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L Street
Washington, DC 20530

This, the 12th day of June, 2006.

*William M. Beasley*
William M. Beasley