# In the United States Court of Federal Claims

Case No. 05-1236C
(Filed: December 20, 2006)
TO BE PUBLISHED

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * * * * * * | Public Safety Officers' Benefits Act, PSOBA, 42 U.S.C. § 3796, *et seq.*; Eligibility for benefits; Filing of a Claim, 28 C.F.R. § 32.20 (2001); Execution of a Claim, 28 C.F.R. § 32.19 (2001); Payment to a beneficiary's estate; *Chevron* deference; plain meaning of regulation. |
| **EVA P. WHITE, Administratrix of the Estate of CHRISTINE H. ROBERTS** *Plaintiff,* | |
| v. | |
| **THE UNITED STATES OF AMERICA,** *Defendant.* | |
| * * * * * * * * * * * * * * * * * * * * * * * * * * | |

***William M. Beasley***, Tupelo, Mississippi, Counsel for Plaintiff. Oral argument was presented by ***Rachel Pierce***.

***Allison Kidd-Miller***, Commercial Litigation Branch, Department of Justice, Washington, D.C., attorney of record for the Defendant. With her on the briefs were ***David M. Cohen***, Director, ***Kathryn A. Bleecker***, Assistant Director, and ***Peter D. Keisler***, Assistant Attorney General. ***Rafael A. Madan*** and ***Jason P. Cooley*** of counsel.

***Arielle Cohen***, law clerk.

**OPINION**

**BASKIR, Judge.**

The Plaintiff is the administratrix of the estate of Christine Roberts, the mother of Harold Ray Presley, a Sheriff of Lee County, Mississippi. Sheriff Presley was fatally shot while pursuing a suspect on July 6, 2001. The Plaintiff appeals the decision of the Bureau of Justice Assistance (BJA) denying the payment of benefits pursuant to the Public Safety Officers' Benefits Act (PSOBA), 42 U.S.C. § 3796, *et seq.* (2001).

The PSOBA provides for the payment of benefits to certain survivors of public safety officers who die in the line of duty. 42 U.S.C. § 3796 (2001). When he died, Sheriff Presley was survived by Ms. Roberts his mother and by three adult children. The children were not eligible for benefits under PSOBA. Ms. Roberts was eligible at the time of her son's death, but she died approximately two months after her son, before processing of her claim had been completed.

**We find that Ms. Roberts fulfilled the administrative requirements for the initial filing of a claim for benefits. We also find that the subsequent death of an otherwise eligible beneficiary before the processing of the claim does not relieve the BJA of its obligation to pay benefits. Therefore, we grant Plaintiff's Motion for Judgment on the Administrative Record, reverse the BJA's determination and remand this matter to the BJA to complete the administrative steps necessary for the processing and satisfaction of Ms. Roberts' claim. We deny the Defendant's Cross Motion.**

## Background

### I. Sheriff Presley's Death and Submissions to the BJA

On July 6, 2001, Sheriff Harold Ray Presley was fatally shot by a suspect. Consolidated Statement of Uncontroverted Facts ("CSUF") ¶ 1. There is no dispute that Sheriff Presley was killed in the line of duty. *Id.* At the time of his death, Sheriff Presley was survived by his three children, aged 29, 27 and 22, and by his mother, Christine H. Roberts. CSUF ¶ 2.

On July 16, 2001, Janet Burroughs, an employee of the Lee County Sheriff's Department, filled out a Death Benefits Questionnaire ("Questionnaire") and sent it to the BJA Public Safety Officers' Benefits Office ("PSOB Office"). CSUF ¶ 3. The Questionnaire was a BJA form kept on file in the Sheriff's Department. Transcript of Oral Argument ("Tr.") 7:7; *see also* Administrative Record ("AR") 1. The heading of the Questionnaire reads, "Please submit the following information to enable us to request supporting documentation to initiate *your* claim." AR 1 (emphasis added). It is clear that the Questionnaire was designed to initiate a claim under the Act. Eric Martin, a "Benefit Specialist" at the PSOB Office, complied with the intended purpose of the Questionnaire – he opened a claim file with the designation #01-192. AR 4.

Item 11 of the Questionnaire requests the "name, address and telephone number of the head of the decedent's employing agency (Chief, Superintendent, Commissioner, Etc.) as well as the person who will be handling the claim (Contact Person)." AR 2. The final item on the Questionnaire is "Person Completing the Form," which has blanks for name, title, and telephone number. AR 2. The inconsistency of addressing the form to "you," the claimant, while clearly contemplating that an employee of the decedent's agency will be the contact person and will complete the form, is only the first of many contradictions and inconsistencies in this process that threaten to trip up potential beneficiaries.

The Questionnaire submitted by Ms. Burroughs briefly described the circumstances of Sheriff Presley's death. AR 1, item 7. It indicated that Sheriff Presley had no surviving spouse. AR 1, item 8. It listed the names, ages, birth dates and social

security numbers of Sheriff Presley's children and the name, address and social security number of his mother, Ms. Roberts. AR 2, items 10 and 12.

On July 19, 2001, Jimmy D. Shelton, an attorney in Tupelo, Mississippi, sent a fax letter to the PSOB Office stating that his firm had been retained to represent Sheriff Presley's family and requesting the Office contact him to "discuss the benefits available to the family." AR 7.

The electronic file notes from the PSOB Office include two entries dated "7/19/01." The first entry reads "Jimmy Shelton represents the family of Sheriff Presley, letter of representation in file." AR Supp. 165. The second entry reads "[f]orms mailed out." *Id*. Presumably, the second entry refers to the forms attached to a letter sent July 19, 2001 by Mr. Martin. CSUF ¶ 6; AR 4. Although the PSOB Office was obviously aware of Mr. Shelton's representation, the letter and forms were not sent to him. Instead, they were sent to Ms. Burroughs and carbon copied to Ms. Roberts, who was 86 years old at the time and suffering from a heart condition. CSUF ¶ 6; AR 4-5, 126. Despite the acknowledgment of Mr. Shelton's legal representation of the Plaintiff's family, there is no evidence that the PSOB Office ever directly contacted him.

The July 19 letter to Ms. Burroughs from Mr. Martin was headed "Ref: PSOB Claim #01-192: Sheriff Harold Ray Presley." It referenced two forms which had to be filled out and provided to the PSOB Office along with supporting documents. One was the "Report of Public Safety Officer's Death" to be completed by the Sheriff's Department and supported with the autopsy report and other evidence of the circumstances of Sheriff Presley's death. The other was the "Claim for Death Benefits" to be completed and signed by the claimant and supported by evidence of the claimant's relationship to the decedent and eligibility for benefits. Mr. Martin's letter requested that the Sheriff's Department assist the family in "the preparation of its claim" and that all documents be gathered and submitted in a single package from the Department. It should be emphasized that although the letter referred to certain steps that had to be taken by the potential claimant (*i.e.* signing the "Claim for Death Benefits"), the letter was not directed to a member of the family or to the family's attorney of record.

II. Ms. Roberts' Death and the Administrative Closeout

On September 7, 2001, Sheriff Presley's mother, Christine H. Roberts, passed away. CSUF ¶ 7. The PSOB Office learned of her death on either September 14 or 17. AR 65, AR Supp. 166.

The next communication from the PSOB Office is dated October 12, 2001. It is from Eric Martin and, like the July 19 letter, is directed to Ms. Burroughs. AR 8. It is carbon copied to Charlene Presley (who is never identified in the Administrative Record) and Jimmy D. Shelton. AR 9. The letter indicates that on July 19, the PSOB Office "*initiated the claim* for benefits" but since then has not received any of the

required supporting documents. AR 9 (emphasis added). The letter states that Sheriff Presley's two oldest children do not satisfy the eligibility requirements because they are too old and that the youngest daughter, Jada Presley, would only be eligible under the Act if "she was enrolled in an educational program when her father died." AR 8, *see* 42 U.S.C. § 3796b (2001). The letter states that Jada Presley is the only potentially eligible beneficiary because Ms. Roberts had passed away.

On February 22, 2002, Mr. Martin wrote a memorandum to the file with the subject "Administrative Closeout." CSUF ¶ 11. The text of the memorandum reads:

> On July 19, 2001, *a claim for death benefits was initiated* on behalf of the survivors of Sheriff Harold R. Presley. The contact person was Janet Burroughs. The case number was 01-192. Sheriff Presley's mother, the only eligible beneficiary, passed away before any documentation was filed with the PSOB office.
>
> As there was not a delay on the part of the PSOB office and no eligible claimant exists in this case, the claim is considered closed in accordance with Volume 28, Section 32.10(b) of the Code of Federal Regulations.

AR 11 (emphasis added). The section of the CFR to which Mr. Martin refers merely states that if there are no eligible beneficiaries, no benefit shall be paid. It does not appear that Mr. Martin notified anyone – Ms. Burroughs, Mr. Shelton, or the family – that the file was closed.

III. <u>The Formal Determination and Review Process</u>

On July 26, 2002, the family's new attorney, Larry Magdovitz, sent the Report of Public Safety Officer's Death, the Claim for Death Benefits, and several supporting documents to the PSOB Office. AR 15. The Claim for Death Benefits sent July 26, 2002 does not list Ms. Roberts as a potential beneficiary. AR 22. However, the PSOB Office has since received all the necessary documentation for a claim on Ms. Roberts' behalf except for a copy of Sheriff Presley's birth certificate, which Plaintiff can provide. Tr. 61:6-19.

Not until December 30, 2002, after repeated requests from Mr. Magdovitz, did the PSOB Office issue a formal claim determination. CSUF ¶ 12, 14; AR 12, 28, 31. The claim determination stated that none of Sheriff Presley's children were eligible beneficiaries. AR 32. It went on to state:

> Christine Roberts never submitted a claim and never received a PSOB award before she died. In such circumstances, Ms. Roberts' estate may not assert any cognizable interest in benefits provided by the PSOB Program. Moreover, even upon a formal claim, no benefits would be awarded to Ms. Roberts' estate because to do otherwise would be to

> subvert the very purpose of the PSOB Program, which is to provide a measure of economic security for the officer's eligible beneficiaries, such as a dependent spouse, children or parents.

*Id*. No legal support was provided for these assertions. Furthermore, the letter did not include information regarding the right to a hearing as required by 28 C.F.R. § 32.23 (2002).

On March 28, 2003, counsel for Ms. Roberts' estate requested a hearing. CSUF ¶ 15. The hearing was held February 19, 2004. CSUF ¶ 16. Neither the request for the hearing nor the hearing itself was timely under the regulations, but neither party has raised that as an issue. *See* 28 C.F.R. § 32.24 (2002) (requiring that hearing be requested within 30 days of notification of a negative determination and held within 60 days of a request). The hearing officer denied the payment of death benefits. CSUF ¶ 17. The decision is based on Ms. Roberts' failure to submit a claim for benefits and the fact that she would not "gain any measure of economic security with an award of benefits to her estate," contrary to the purpose of the PSOBA. AR 144-145.

On September 21, 2004, counsel for Ms. Roberts' estate requested a review of the hearing officer's decision. CSUF ¶ 18. On February 17, 2005, after three follow-up letters from counsel for the estate, the Director of BJA issued a Final Agency Decision affirming the denial of benefits. CSUF ¶ 19; AR 153. The decision appears to rest on an assertion that Ms. Roberts never filed a claim for benefits:

> The decedent's mother. . . could have filed a claim at any time between his death and her own; had she done so, she would have been a proper claimant, because she was eligible to receive the benefit.

AR 159. However, other portions of the decision seem to require not only the filing of a claim, but the survival of the claimant until the end of the process:

> That it now appears likely that [Ms. Roberts] may have been an eligible beneficiary had she survived, does not obviate the fact that as of July 29 [sic], 2002 – when BJA claim review and determination and benefit payment first became possible – no eligible claimants then existed . . . .

AR 160-61.

The Plaintiff appeals the final decision of the Director of BJA denying payment of death benefits.

**Discussion**

I. Jurisdiction

The Tucker Act confers jurisdiction on the United States Court of Federal Claims over certain suits for money against the United States founded upon the Constitution or Federal law and waives sovereign immunity. 28 U.S.C. §1491. The substantive right to money from the United States must be found outside the Tucker Act. *See e.g., United States v. Mitchell*, 463 U.S. 206, 216-217 (1983). The PSOBA qualifies as a separate money-mandating statute. *See e.g. Fisher v. United States*, 402 F.3d 1167, 1171 (Fed. Cir. 2005). This Court has jurisdiction to review the BJA final decision.

II. Standard of Review

Judicial review of a decision of the Director of the BJA denying benefits is limited to three inquiries: 1) whether it substantially complies with the statute and implementing regulations; 2) whether it was arbitrary or capricious; and 3) whether it was supported by substantial evidence. *See Chacon v. United* States, 48 F.3d 508, 511-12 (Fed. Cir. 1995) (quoting *Morrow v. United States*, 227 Ct.Cl. 290, 296 (1981)). The Plaintiff argues that the denial of benefits was contrary to law and regulation and arbitrary and capricious. The facts in this case are not disputed. Rather, the dispute centers on the meaning of the PSOBA and the BJA's regulations.

As a remedial statute, the PSOBA "should not be applied grudgingly, but rather should be construed liberally to avoid frustration of its beneficial legislative purposes." *Demutiis v. United States*, 48 Fed. Cl. 81, 86 (2000). "A liberal construction is ordinarily one which makes the statutory rule or principle apply to more things or in more situations than would be the case under a strict construction." 3 N. Singer, Sutherland Statutory Construction § 60.1 (6th ed. 2001).

The Government asserts that its interpretation of the statute is entitled to deference under *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). Def.'s Cross Mot. 17-19. *Chevron* deference to properly enacted regulations is appropriate where, as here, Congress has given an "express delegation of authority to the agency to elucidate a specific provision of the statute by regulation." *Id*. at 844. Deference is not due where the agency interpretation as expressed in regulation is contrary to the unambiguous intent of Congress. *Id*. at 842-843. The Supreme Court has also clarified that deference does not extend to agency statutory interpretations found outside the regulations in rulings, opinion letters and the like. *U.S. v. Mead*, 533 U.S. 218, 233 (2001); *Christensen v. Harris County*, 529 U.S. 576, 587 (2000). The Government incorrectly seeks deference to its interpretation of the BJA regulations. Tr. 57:20. The Court's decision in this case not only defers to, but is based on, the plain language of the PSOBA implementing regulations. The readings of those regulations put forward by the Government are not entitled to *Chevron* deference.

This case is before the Court on cross motions for judgment on the administrative record pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims ("RCFC"). The standard of review for a motion under RCFC 52.1 remains unchanged from the standard under the now-repealed RCFC 56.1. *Groff v. United States*, 72 Fed.Cl. 68, 70 (2006). When making a judgment under RCFC 52.1, the court must determine whether a party has met its burden of proof based on the evidence in the administrative record, much as if it were trying the case (rather than applying the presumptions and burden-shifting of summary judgment). *Bannum, Inc. v. United States*, 404 F.3d 1346, 1355-1357 (Fed. Cir. 2005).

III. Analysis

A. Eligibility Under the Act

The PSOBA provides for the payment of benefits to certain survivors of public safety officers who are killed in the line of duty. The full text of the subsection of the PSOBA at issue in this case reads as follows:

> (a) Amount; recipients
> In any case in which the Bureau of Justice Assistance (hereinafter in this subchapter referred to as the "Bureau") determines, under regulations issued pursuant to this subchapter, that a public safety officer has died as the direct and proximate result of a personal injury sustained in the line of duty, the Bureau shall pay a benefit of $100,000, adjusted in accordance with subsection (h) of this section, as follows:
>
> (1) if there is no surviving child of such officer, to the surviving spouse of such officer;
>
> (2) if there is a surviving child or children and a surviving spouse, one-half to the surviving child or children of such officer in equal shares and one-half to the surviving spouse;
>
> (3) if there is no surviving spouse, to the child or children of such officer in equal shares; or
>
> (4) if none of the above, to the parent or parents of such officer in equal shares.

42 U.S.C. § 3796 (2001). The amount of benefits was increased to $250,000 retroactively effective on January 1, 2001 by legislation passed shortly after 9/11. Pub.L. 107- 56, § 613(b) (October 26, 2001), 115 Stat. 370.

"Child" is further defined by statute to include only children under 19 years of age, between 19 and 22 and engaged in full-time school or training, or of any age but incapable of self-support because of a disability. 42 U.S.C. § 3796b. It is undisputed that none of Sheriff Presley's three surviving children satisfied this definition at the time of his death.

B. Administrative Requirements for Receiving Benefits

Much of the disagreement in this case arises from confusion about the interaction of two sections of the implementing regulations. The first section is titled "Persons executing claims." 28 C.F.R. § 32.19 (2001). The second section is titled "Claims." 28 C.F.R. § 32.20 (2001). Both parties argued this issue in their briefs as if §§ 32.19 and 32.20 apply simultaneously. However, the language of the regulations clearly refers to two different stages of the application process.

Section 32.19 addresses who may "execute" a claim. Section 32.20 lays out the procedure for "filing" a claim. The first definition of "execute" in Black's Law Dictionary is "[t]o *perform or complete* (a contract or duty)." Black's Law Dictionary, 8th ed. 2004 (emphasis added). The definition of "file," by contrast, is "[t]o *deliver* a legal document to the court clerk or record custodian for placement into the official record" or "[t]o *commence* a lawsuit." *Id*. (emphasis added). Furthermore, § 32.20 explicitly incorporates § 32.19 when discussing the requirements for the withdrawal of a claim, ensuring that only an authorized representative can terminate the process. But § 32.19 is not incorporated into the other three paragraphs. Compare § 32.20(a), (b) and (c) and 32.20(d).

The Government has obscured its refusal to pay benefits to Ms. Roberts by using even more terms such as "preliminary" steps, claim "initiation," and "submission" of a claim. Defendant's Cross Motion ("DCM") 15; Def.'s Reply 6, 7; Tr. 35:8, 36:18. The BJA's regulations must control. The regulations define *two* stages: the filing of a claim and the execution of a claim. (If the claim is initially denied, there are additional stages). Ms. Roberts satisfied the requirements for filing a claim.

Because the exact language is critical, we reproduce § 32.20 in full:

> Claims
>
> (a) Claimants are encouraged to submit their claims on OJP Form 3650/5 for death benefits, or the disability benefits claim form, which can be obtained from: Public Safety Officers' Benefits Program, Bureau of Justice Assistance, Washington, DC 20531.
>
> (b) Where an individual files OJP Form 3650/5 for death benefits, or the disability benefits claim form, *or other written statement with the Bureau*

> *which indicates an intention to claim benefits, the filing of such written statement shall be considered to be the filing of a claim for benefits*.
>
> (c) A claim by a permanently and totally disabled public safety officer or on behalf of survivor [sic] of a deceased public safety officer shall be filed within 1 year after the date of death or prerequisite disability certification unless the time for filing is extended by the Director for good cause shown.
>
> (d) Except as otherwise provided in this part, the withdrawal of a claim, the cancellation of a request for such withdrawal, or any notice provided for pursuant to the regulations in this part, shall be in writing and shall be signed by the claimant or the person legally designated to execute a claim under § 32.19.

28 C.F.R. § 32.20 (2001) (emphasis added). A precise reading of this section yields the two requirements for filing a claim.

First, while claimants are encouraged to file using a specified form, the filing of a written statement which indicates the intention to claim benefits "*shall* be considered to be a claim for benefits." § 32.20(b) (emphasis added). Paragraph (b) refers to filing by "an individual," paragraph (c) recognizes that a claim may be filed "on behalf of" a survivor of the deceased officer. The intention of § 32.20 is clearly to make filing a claim as easy and informal as possible. Again, we note the contrast with paragraph (d), which makes withdrawal of a claim more difficult.

Second, the claim must be filed within one year of the death of the public safety officer. § 32.20(c). We note that this is the only time limit mentioned with regard to the claim process. After filing, submission of supporting evidence must occur within a reasonable period, but the BJA must specify a time limit when it informs the claimant what evidence is necessary. § 32.21(b). It was not specifically raised by Plaintiff, but Mr. Martin's July 19, 2001 letter to Ms. Burroughs listing the evidentiary requirements needed to process (execute) the claim did not specify a time limit for submission. This is noteworthy given that the crux of the Government's argument is that Ms. Roberts' claim was simply too late.

Two events occurred between the deaths of Sheriff Presley and his mother that satisfy the filing requirement. The first is the submission of the Questionnaire by Ms. Burroughs on July 16, 2001. The second is the fax from Jimmy Shelton on July 19, 2001.

1. <u>The Death Benefits Questionnaire</u>

The staff at the PSOB Office properly treated the submission of the Questionnaire as the filing of a claim. They assigned a claim number to the case and

"initiated a claim for benefits" on July 19. AR 4, 8, 11. They also called upon Ms. Burroughs to obtain and submit the documentation needed to substantiate the claim. Nevertheless, the Government presents two arguments against construing the submission of the Questionnaire as the filing of a claim. First, the Government argues that submission of the Questionnaire is a preliminary step that is merely "one vehicle by which the PSOB office learns of an officer's death" and "triggers the mailing of a letter detailing how a claim should be filed." Def.'s Reply 3. The plain language of § 32.20(b) utterly defeats this argument. The Questionnaire is a written statement that indicates intent to claim benefits. Such an indication constitutes "the filing of a claim for benefits." 28 C.F.R. § 32.20(b) (2001).

The Government's second argument is that the Questionnaire was not filed by a proper party. The argument confuses the language of § 32.20 with the language of § 32.19, which reads in relevant part:

> Persons executing claims.
>
> (a) The Bureau shall determine who is the proper party to execute a claim in accordance with paragraphs (a) (1) through (3) of this section–
>
> (1) The claim shall be executed by the claimant or the claimant's legally designated representative if the claimant is mentally competent and physically able to execute the claim.
>
> (2) If the claimant is mentally incompetent or physically unable to execute the claim and–
> (i) Has a legally appointed guardian, committee, or other representative, the claim may be executed by such guardian, committee, or other representative; or
> (ii) Is in the care of an institution, the claim may be executed by the manager or principal officer of such institution.
>
> (3) For good cause shown, such as the age or prolonged absence of the claimant, the Bureau may accept a claim executed by a person other than one described in paragraphs (a)(1) and (a)(2) of this section.

28 C.F.R. § 32.19(a) (2001).

As discussed above, the requirements of § 32.19 for claim execution are not incorporated into § 32.20(b) and (c). An individual claimant, or any person acting on his or her behalf, may file a claim.

Even if the execution requirements were applicable, the Government's insistence that Ms. Burroughs was not authorized to file a claim on Ms. Roberts' behalf is disingenuous at best. The BJA, acting through Mr. Martin's letters, selected

Ms. Burroughs as the contact person, despite notification that an attorney was representing the family. Section 32.19 provides that the Bureau "shall determine" the proper party to execute a claim. The selection of Ms. Burroughs as the contact person effectively constitutes the BJA's determination of the proper party to execute the claim.

2. The July 19, 2001 Fax from Jimmy Shelton

Neither party addressed the Shelton fax in their briefs, despite the fact that the representative's letter was received and so noted in the BJA files. Moreover, the letter was never discussed by the BJA in its various written opinions which challenged the existence of a filed claim. However, at the invitation of the Court, the letter was discussed at length in oral argument. Mr. Shelton's fax to the PSOB Office indicated that he was representing the family of the late Mr. Presley and asks that the PSOB Office contact Mr. Shelton to "discuss the benefits available to the family." AR 6-7. The letter is unarguably a written statement indicating intention. Furthermore, because Mr. Shelton is the legal representative of the family, it also answers the Government's insistence on the applicability of § 32.19. *See* § 32.19 (a)(1). In oral argument, Government Counsel had no adequate response to the contention that Mr. Shelton's letter satisfies all elements of filing a claim. Tr. 41:1-45:23. The BJA has never explained why it relied on the later-disavowed Ms. Burroughs and ignored the family's legal representative.

C. Payment of Benefits to a Beneficiary's Estate

We have determined that Ms. Roberts did everything necessary to file a claim for benefits within one year of the death of her son. The submission of supporting documentation necessary to execute her claim was done by her legal representative on July 26, 2002, in compliance with § 32.19 (a)(1). If any items are missing, they can still be submitted – there is no time limit for execution in the regulations. The PSOB Office never attempted to set one as it could have done under § 32.21(b). There is no dispute Ms. Roberts was a proper beneficiary and would be entitled to the PSOBA benefits once the paperwork was complete. The remaining dispute between the parties is whether Ms. Roberts lost her eligibility when she died. We hold that she did not.

The Government claims that there is nothing in the statute affirmatively authorizing payment of benefits to an estate and that the language requiring payment "*to* the parent or parents" (42 U.S.C. § 3796(a)(4) (emphasis in Government's briefs)) would be violated by payment to an estate. The Government also claims that the administrative interpretation of the statute evidenced by the regulations forbids payment to estates and is entitled to *Chevron* deference.

1. The Regulations

We start with the regulations. We do not find anything in the language of the implementing regulations which terminates the eligibility of a beneficiary upon her death

or which forbids payment of benefits to a beneficiary's estate. Indeed, the Government admitted this was a case of first impression and that there was no prior written expression of this limitation – guideline, instruction, legal memo, etc. – unrelated to this case. Tr. 51:22, 57:20.

The Government relies mainly on 28 C.F.R. § 32.10 (2001), which recites the categories of eligible beneficiaries under the act. Section 32.10(a)(4) adds the modifier "surviving" to the class of parents eligible for benefits ("to the surviving parent, or to the surviving parents in equal shares.") Section 32.10(b) provides "[i]f no one qualifies as provided in paragraph (a) of this section, no benefit shall be paid." We disagree with the Government's contention that § 32.10(b) applies to these circumstances. Paragraph (b) merely recites the obvious, that the BJA will not pay benefits in the absence of an eligible claimant. The provision does not answer the question of whether or when eligibility may be lost.

As for the modifier "surviving," we find that it applies only at the point in time when the public safety officer died, not at some indeterminate future time in the application process. This is consistent with the treatment of other eligibility criteria, such as age, student status or dependency. For example, the determination of eligibility of children depends on their status at the time of the public safety officer's death. A child who turned 19 during the administrative process does not lose his or her eligibility and will still collect benefits. 28 C.F.R. § 32.2(v) (2001). Similarly, a child between 19 and 22 and in school at the time of the public safety officer's death does not lose benefits by virtue of graduating or leaving school before the payment was made. 28 C.F.R. 32.2(v), (x); *see also* discussion of Jada Presley's eligibility in the October 26, 2001 letter (AR 8). The determination of dependency for children over the age of 18 and not in school is also determined as of the time of the public safety officer's death. 28 C.F.R. § 32.2(v). Sometimes the regulations are silent with regard to timing, but nowhere do the regulations specify any time other than the date of the public safety officer's death for determining any criterion of eligibility. Government Counsel argued that "surviving" should have a different meaning as respects parents (surviving until receipt of the award) than for other purposes (surviving the public safety officer's death). Tr. 49:17-51:11. We do not accept such a proposition.

The regulations contain a section titled "Determination of relationship of parent." 28 C.F.R. § 32.14 (2001). This section delineates various acceptable forms of proof for demonstrating that a beneficiary is the parent of the deceased public safety officer. The section has no other criteria for eligibility. It does not even include the word "surviving." The regulations offer no basis for treating the intervening circumstance of death of an otherwise eligible beneficiary during the application process differently from other intervening circumstances, such as aging or departure from school.

A hypothetical demonstrates that this is the only possible reading of the modifier "surviving." Assume that a beneficiary filed and executed a claim which the BJA denied. As it has in this case, the appeals process may take years. It is ridiculous to

think that if a claimant ultimately prevailed in a court appeal but died the day before the BJA actually cut the check, the beneficiary's entitlement would be nullified. Claimants are clearly not required to survive until the day payment is deposited in their bank accounts. If survivor status is supposed to be tested at some intermediate stage of the application process, that would have to be made explicit in the regulations to avoid unacceptable uncertainty.

In this respect we note Mr. Martin's observation in his closure memo that "[a]s there was not a delay on the part of the PSOB office . . . the claim is considered closed." AR 11. There was, of course, delay caused by the PSOB Office. It lay in relying on the unresponsive and later disavowed Ms. Burroughs instead of Ms. Roberts' lawyer, Mr. Shelton. Mr. Shelton, aware of the age of his client, may well have moved with dispatch had the July 19, 2001 letter been sent directly to him.

2. Legislative Intent

In any case, if the implementing regulations *did* forbid the payment of benefits to the estate of a deceased beneficiary, they would be contrary to the statute and therefore not entitled to deference from this Court under the second stage of *Chevron* analysis. *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 5. "To determine whether an agency's interpretation is reasonable [and therefore entitled to deference], a court should look to the text of the statute, the overall structure of the statute, the statute's purpose, and the legislative history." *Davis v. United States*, 50 Fed. Cl. 192, 206 (2001) (holding that the BJA Director's interpretation of "line of duty" was contrary to the PSOBA).

The text of the PSOBA is silent as regards payment to an estate. However, the structure of the statute indicates that payment to an estate might be contemplated. The Government asserts that the language "to the parent or parents" precludes payment of benefits to "an inanimate entity" such as an estate. DCM 18. This language is identical to the language used in the other categories of potential beneficiaries. Payment is to be made "to the surviving spouse," "to the surviving child or children in equal shares" or "one-half to the surviving child or children of such officer in equal shares and one-half to the surviving spouse." 42 U.S.C. § 3796(a)(1), (2) & (3) (2001). In cases where the beneficiaries are very young children or otherwise unable to manage their own finances, the Act surely comprehends the payment of benefits into a trust or other entity acting on behalf of the beneficiary. Similarly, "to the parent or parents" cannot be read as literally as the Government suggests.

The Government makes much of the legislative purpose and history of the PSOBA, arguing that payment of benefits to an estate would "subvert the clear purpose of the statute." DCM 20-21. The only statutory purpose which the Government acknowledges is the provision of economic security to beneficiaries. While this is certainly one major purpose of the PSOBA, it is not the only purpose. The text and legislative history indicate that Congress did not intend to limit the payment of benefits

only to financially dependent family members, and in fact saw a symbolic value in the payment of benefits regardless of need.

First, it is clear from the text of the statute that economic need of beneficiaries is not an element of eligibility. Spouses and parents receive benefits regardless of need. Only for the category of children, where eligibility is limited to children under 19, full-time students ages 19-22 or children of any age but incapable of self-support, can we infer Congress considered financial need. 42 U.S.C. §§ 3796, 3796b (2001). Even there, Congress uses proxies for probable dependency (such as age), rather than calling for a direct needs test.

Furthermore, the Government ignored a critical event in the legislative history that undermines its argument for a sole legislative purpose of addressing economic need. The original version of the Act, enacted in 1976, provided that benefits would be paid "to the *dependent* parent or parents of such officer." P.L. 94-430, 90 Stat. 1346 (emphasis added). Congress struck the word dependent in 1988 at the same time that it amended the Act to increase the amount of benefits. P.L. 100-690, Title VI, Subtitle C, Part 3, § 6105. The rationale for the change was offered by Senator Biden, Chairman of the Senate Judiciary Committee, when he presented his committee's analysis of the amendment. In their view, the changes were necessary "not only to assist the families of public safety officers who are killed in the line of duty, but also to symbolize this country's support for the women and men who daily risk their lives to protect our families, our communities and our property." 134 Cong. Rec. S17360, S17363.

This second purpose, to recognize and show gratitude for the sacrifices made by the families of public safety officers, is not subverted by the payment of benefits to a beneficiary's estate. Rather, Congressional intent is subverted by the denial of payment where there is no dispute either that Sheriff Presley died in the line of duty or that his mother was an eligible beneficiary at the time of his death.

## Conclusion

**For the reasons discussed above, we grant the Plaintiff's Motion for Judgment on the Administrative Record and deny the Government's Cross Motion. We reverse the BJA's determination and remand this matter for further administrative steps necessary to complete the processing of Ms. Roberts' claim. The Defendant shall file a status report indicating the progress of the remand within 60 days, or no later than February 20, 2007.**

**IT IS SO ORDERED.**

**/s/ Lawrence M. Baskir**
**LAWRENCE M. BASKIR**
**Judge**